OPINION OF THE COURT
Martin B. Stecher, J.
The petitions of Raymond A. Brager and Sandy Bragar (hereinafter the owners) to dismiss a demand for arbitration made by Konstantine W. Tsombikos (hereinafter called the contractor) and to discharge the mechanic’s lien filed by the contractor are consolidated for disposition.
*996 The owners are proprietary lessees of a cooperative apartment in New York City. By written agreement dated February 6, 1989, the owner and contractor entered into an agreement for the renovation of the apartment.
The contractor commenced work on or about February 7, 1989. It appears from an affidavit submitted by the architect that "there were numerous disputes between” the contractor and the owners. Thereafter the following events occurred:
On August 24, 1989 all work terminated. Whether the contractor walked oif the job or was dismissed is a matter of dispute.
On September 5, 1989, the contractor filed a mechanic’s lien claiming that there was due him $65,261.
On September 22, 1989, the owners presented a claim against the contractor to the architect.
On September 28, 1989, the architect declined to "mediate” the dispute presented by the owners "for the moment.”
On October 17, 1989, the owners served their petition to cancel the mechanic’s lien accompanied by a 30-day notice "to commence an arbitration on or before November 27, 1989 to enforce the lien.”
On November 22, 1989, the contractor commenced an arbitration for "collection of monies * * * for services rendered in the improvement”. There is no reference in the demand for arbitration to a lien foreclosure.
On December 12, 1989, the owners, by order to show cause containing a temporary restraining order, sought a stay of the arbitration initiated by the contractor.
We turn first to the demand for discharge of the mechanic’s lien.
Section 59 of the Lien Law provides that before a mechanic’s lien may be discharged, a notice shall be served on the lienor which "shall require the lienor to commence an action to enforce the lien, within a time specified in the notice, not less than thirty days from the time of service, or show cause * * * why the notice of lien filed * * * should not be vacated”.
The owners’ notice referred to arbitration rather than to the action called for by the statute. Not raised by either party is the issue of whether an arbitration proceeding is, or can be considered, "an action to enforce the lien”.
Although parties may agree to resolve their disputes by arbitration, "where jurisdiction over a particular type of *997 dispute is statutorily bestowed exclusively upon the courts * * * an agreement to arbitrate will not be given effect by the courts” (Maross Constr. v Central N. Y. Regional Transp. Auth., 66 NY2d 341, 345-346). Article 3 of the Lien Law, enforcement of liens on real property, presents a statutory scheme whereby enforcement is accomplished "by an action * * * in the supreme court” (§ 41). Reference is made to "an action in a court of record” (§ 44) and "an action * * * brought in a court not of record” (§ 46). "The court may adjust and determine the equities of all the parties to the action and the order of priority of different liens” (§ 45) and may, in its discretion, award costs and disbursements (§ 53). Enforcement by action is contemplated, not by arbitration.
Significantly, the Lien Law mentions arbitration in section 35: "The filing of a notice of lien shall not be a waiver of any right of arbitration of a contractor, subcontractor, material man or laborer secured to him by his contract to furnish labor or materials. In case the arbitrators, in any arbitration proceeding had pursuant to any such contract, shall determine the value or price of labor performed or material furnished, their award shall be conclusive as between all parties to the arbitration in any action to foreclose the lien” (emphasis added).
Plainly the power to enforce a mechanic’s lien has been "statutorily bestowed exclusively on the courts”. (Maross Constr. v Central N. Y. Regional Transp. Auth., supra, at 345.) An arbitration proceeding cannot be substituted for a judicial decree. The owners’ notice demanding that Tsombikos commence arbitration, rather than an action, to enforce the lien was fatally defective. Accordingly, the application to vacate the mechanic’s lien is denied.
We turn then to the demand for a stay of arbitration.
Article 10 of the contract deals with disputes between the parties. To the extent relevant here it requires that "any claim, dispute or other matter in question between the Contractor and the Owner of any kind whatsoever in connection with the Contract, Document, Work on Project [sic] shall first be submitted by the claiming party * * * in writing to the Architect and the other party * * * no later than one month after notice of the occurrence or omission that allegedly give rise to the damages” (§ 10.1.1). Thereafter, according to the contract, if any party is aggrieved he may submit his claim to arbitration.
*998 The agreement goes on to provide (§ 10.2.1) that the "Contractor and Owner waive all claims, disputes and other matters in question, of any kind whatsoever in connection with any provision of this Agreement, the Contract, the Work or the Project not timely submitted to the Architect pursuant to para. 10.1.”
There is no dispute that the contractor did not file any claim with the architect.
The contract, of course, provided for architectural services beyond the mediation of disputes. It provided that "the Architect and the Owner will provide administration of the Contract” (§ 4.7.1); that "the Architect will determine in general that the Work of the Contractor is being performed in accordance with the Contract Documents” (§ 4.7.2); that "the Contractor will schedule and coordinate the Work of all Contractor’s Personnel on the Project including their use of the site” (§ 4.7.5); that "the Architect will determine the amount owing to the Contractor” (§4.7.6); that "the Architect will render interpretations necessary for the proper execution or progress of work” (§ 4.7.7); that "the Owner and Architect will have authority to reject work which does not conform to the Contract Documents” (§ 4.7.8); and that "the Architect will determine the dates of Substantial Completion and Final Completion” (§ 4.7.10).
In short, it is quite clear that mediation duties were a minor part of the architect’s over-all duties in supervising this improvement.
Submission of the contractor’s claim to the architect is not a condition precedent to arbitration under the facts of this case (Matter of Liebhafsky [Comstruct Assocs.], 62 NY2d 439; Matter of County of Rockland [Primiano Constr. Co.], 51 NY2d 1). In Primiano (supra), long after the work was substantially completed, the contractor submitted a claim for delay damages. The court held that under the general conditions of the contract the "authority of the architect is centered on the operational phases of the construction” (51 NY2d, at 11). Thus, a "claim * * * for delay damages, asserted some two years after substantial completion of the contract and occupation of the building” need not be submitted to the architect as a condition precedent to the arbitration (51 NY2d, at 11). In Liebhafsky (supra), the Court of Appeals, in a gloss on Primiano, said (62 NY2d, at 440-441), that "the architect’s role as mediator, to whom all disputes 'relating to the execution or *999 progress of the Work * * *’ is but one aspect of the architect’s general responsibility to supervise the contract in order to expedite its completion. The essence of our decision in Matter of County of Rockland (Primiano Constr. Co.) (supra) is that this role terminated once the architect is no longer responsible for supervising the contractor’s performance. Whether the contractor’s services have terminated because of substantial completion of the work or on the ground that he has substantially violated the terms of the contract is not controlling. In either instance the architect’s responsibility to supervise the contractor’s performance and, by extension initially mediate his disputes, is at an end.”
Both the date of filing of the mechanic’s lien (Sept. 5, 1989) and the date that arbitration was demanded (Nov. 22, 1989) were subsequent to the termination of Tsombikos’ role as a contractor (Aug. 24, 1989). By each of these dates "the architect’s responsibility to supervise the contractor’s performance and, by extension initially mediate his disputes” was at an end.
Consequently, the petition to stay arbitration must be and is denied and dismissed and the parties are directed to proceed
to arbitration. The stay of arbitration is vacated.