## PaineWebber, Inc. *v.* American Arbitration Association et al.
### (13938)

Peters, C. J., Callahan, Glass, Borden and Santaniello, Js.

Argued November 6, 1990—decision released January 22, 1991

*James R. Hawkins II,* with whom were *Daniel F. Sullivan* and, on the brief, *Sally S. King,* for the appellant (plaintiff).

*Raymond A. Garcia,* for the appellees (defendant Alex Charts et al.).

Borden, J. The plaintiff, PaineWebber, Inc. (PaineWebber), appeals from the judgment of the trial court (1) denying its motion for a permanent injunc-

tion, and (2) dissolving a temporary restraining order. The temporary restraining order had enjoined the defendants[1] from proceeding with an arbitration that they had filed with the American Arbitration Association (AAA) in Hartford, and the motion sought to make that order permanent. PaineWebber claims that the trial court improperly denied the motion for a permanent injunction and improperly dissolved the temporary restraining order.[2] We affirm the judgment of the trial court.

The following facts, and the procedural thicket to which they led, are undisputed. The Charts were customers of PaineWebber, a securities trader. The parties entered into three agreements, all on preprinted forms supplied by PaineWebber. One agreement, dated October 30, 1985, entitled "Client's Agreement" (client agreement), defined their relationship as customer and securities trader. Paragraph 17 of this agreement provided in pertinent part that the "agreement and its enforcement shall be construed and governed by the laws of the State of New York . . . ."[3] Paragraph 19 provided in pertinent part that disputes between them "shall be settled by arbitration in accordance with the rules in effect of either the New York Stock Exchange, Inc., American Stock Exchange, Inc., [or] National

[1] The defendants are Alex Charts and Helena Charts, and the named defendant, the American Arbitration Association (AAA). The AAA has taken a passive role in this litigation, both in the trial court and on appeal, since the actual dispute is between PaineWebber and the Charts. We therefore consider the Charts as the defendants.

[2] After oral argument in this court, PaineWebber withdrew a third ground of appeal, namely, that the trial court abused its discretion in awarding certain sanctions against the plaintiff for its failure to attend a deposition that had been noticed.

[3] Paragraph 17 of the client agreement provided: "Jurisdiction. All transactions made for the account(s) of the undersigned shall be governed by the terms of this agreement. This agreement and its enforcement shall be construed and governed by the laws of the State of New York, and shall be binding upon the heirs, executors, administrators, successors, and assigns of the undersigned."

Association of Securities Dealers, Inc. . . ."[4] The parties also entered into two other agreements, one undated and one dated August 25, 1987, each entitled "Client Option Agreement and Qualification Form" (client option agreement). Both of these agreements contain a paragraph providing in pertinent part that the client option agreement supplemented the client agreement and did not diminish any of the customer's rights thereunder.[5] Paragraph 18 of the undated client option agreement was identical to the arbitration paragraph of the client agreement. See footnote 4, supra. Paragraph 18 of the August 25, 1987 client option agreement was essentially identical to the arbitration paragraphs of the other two agreements.[6]

---

[4] Paragraph 19 of the client agreement provided: "Arbitration. Any controversy between us arising out of or relating to this contract, breach thereof, or any account(s) maintained with you (except any claim for relief by a public customer for which a remedy may exist pursuant to an expressed or implied right of action under the federal securities laws), shall be settled by arbitration in accordance with the rules in effect of either the New York Stock Exchange, Inc., American Stock Exchange, Inc., National Association of Securities Dealers, Inc., or where appropriate, the Chicago Board Options Exchange or National Futures Association, as the undersigned may elect. The undersigned authorizes you to make such election, if such election is not made by the undersigned by registered mail addressed to you at your main office within fifteen (15) days after receipt of notification requesting such election. The award of the arbitrators, or a majority of them, shall be final and judgment on the award may be entered in any court having jurisdiction." It is clear from the context of the agreement that "the undersigned" refers to the Charts and "you" refers to PaineWebber.

[5] Paragraph 17 of both client option agreements provided: "Relationship to Client Agreement. This Agreement supplements where applicable the Client's Agreement entered into between us and will not diminish any of your rights under said Agreement. In the event of any conflict between the terms of this Agreement and the terms of the Client's Agreement, the provisions of this Agreement shall prevail."

[6] Paragraph 18 of the August 25, 1987 client option agreement provided: "Arbitration. It is understood that the following agreement to arbitrate does not constitute a waiver of the right to seek a judicial forum where such a waiver would be void under the federal securities laws. The undersigned agrees, and by carrying an account(s) for the undersigned you agree, that except as inconsistent with the foregoing sentence, all controversies

After a dispute arose between the parties over trading in the Charts' account with PaineWebber, the Charts brought suit against PaineWebber in the United States District Court for the District of Connecticut, alleging that PaineWebber had engaged in unauthorized transactions in the Charts' account. PaineWebber wrote to the Charts reminding them of the agreement to arbitrate, and requested them to dismiss the federal action and to proceed in arbitration. The Charts replied that the "agreement is no longer in effect" between the parties and that the arbitration clause was inapplicable because their claims arose under the federal securities laws. They also stated, however, that if they were "subsequently compelled by a court to arbitrate all or part of this dispute, [they] shall elect the rules of the American Arbitration Association, or the National Association of Securities Dealers (NASD)." PaineWebber then filed a motion in the federal court to compel arbitration, which was granted without objection.[7] Thereafter, PaineWebber requested

which may arise between the undersigned and you (including your employees and agents) concerning any transaction in any account(s) or the construction, performance or breach of this or any other agreement between us, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration. Any arbitration shall be in accordance with the rules in effect of either the New York Stock Exchange, Inc., American Stock Exchange, Inc., National Association of Securities Dealers, Inc., or where appropriate the Chicago Board Options Exchange or National Futures Association, as the undersigned may elect. The undersigned authorizes you to make such election if such election is not made by the undersigned by registered mail addressed to you at your main office within fifteen (15) days after receipt of notification requesting such election. The award of the arbitrators, or a majority of them, shall be final and judgment on the award may be entered in any court having jurisdiction. The undersigned expressly agree(s) that service of process in any action shall be sufficient if served by certified mail, return receipt requested, at my last address known to you. The undersigned expressly waives any defense to service of process as set forth above."

[7] Ultimately, the federal action was dismissed by the court upon the notice to the court by the Charts that "[a]n arbitration is now pending concerning the claims made in this matter."

the Charts to file for arbitration by the National Association of Securities Dealers (NASD) on the basis that the NASD was the Charts' choice of forum consistent with their agreements.

Subsequently, the Charts filed a demand for arbitration with the AAA in Hartford. PaineWebber responded by filing this action in the Superior Court to enjoin the arbitration, claiming that any arbitration by the AAA was unauthorized. The trial court, *Fracasse, J.,* issued a temporary restraining order enjoining the arbitration.

Ultimately, the Charts moved to dissolve the restraining order and PaineWebber moved for a permanent injunction against arbitration by the AAA. The parties submitted these motions to the court, *Schaller, J.,* on the basis of a joint appendix of documents and briefs.[8] In support of its motion for a permanent injunction, PaineWebber claimed that: (1) by declining to arbitrate and by filing the federal lawsuit the Charts had waived their right to arbitrate; (2) by making an equivocal and conditional election of the arbitration forum the Charts had failed to make an effective election, rendering PaineWebber's choice of the NASD as the only effective choice; (3) the Charts' election of the AAA as the forum for the arbitration was illegal because the arbitration agreement provided for arbitration only by the New York Stock Exchange, Inc. (NYSE), the American Stock Exchange, Inc. (Amex) or the NASD;[9] and (4) permanent injunctive relief was therefore necessary to prevent an unlawful arbitration proceeding. The Charts

[8] The joint appendix included copies of the three agreements between the parties, various letters among their attorneys and other persons, pertinent court and arbitration documents, transcripts of certain depositions of officials of the American Stock Exchange, Inc., and of PaineWebber, and pertinent parts of the constitution of the American Stock Exchange, Inc.

[9] Neither PaineWebber nor the Charts have at any time suggested that either the Chicago Board Options Exchange or the National Futures Association was an appropriate forum for arbitration of their dispute.

claimed that PaineWebber was not entitled to a permanent injunction because the rules and constitution of the Amex provide that members of the Amex, such as PaineWebber, must give their customers the option to arbitrate before the AAA unless the customer had agreed in writing only to the arbitration procedure of the Amex. The Charts claimed that they had made no such agreement.

The trial court, without reaching the merits of the parties' legal claims regarding the scope of their arbitration agreements, granted the Charts' motion to dissolve the temporary restraining order and denied PaineWebber's motion for a permanent injunction. The sole basis of the court's decision was that PaineWebber had not established irreparable harm. PaineWebber appealed to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023.

PaineWebber claims that the trial court improperly denied its motion for a permanent injunction. It argues that arbitration before the AAA is not permitted under the parties' agreements because: (1) the agreement limited the arbitration fora to one of the three associations listed therein, namely, the NYSE, the Amex or the NASD, to the exclusion of the AAA; (2) as a matter of policy, arbitration regarding securities disputes should be so limited because those three entities are so-called self-regulating organizations that are extensively regulated by the federal Securities and Exchange Commission in order to ensure the adequacy of their arbitration procedures; and (3) contrary to the Charts' assertion, the constitution and rules of the Amex do not provide for arbitration of securities disputes by the AAA.[10] On the basis of its argument that arbitration

---

[10] PaineWebber also reasserts its argument in the trial court that the Charts waived their right to choose the arbitration forum. The basis of this claim is that the Charts did not make a forum election within fifteen days

before the AAA is unauthorized, PaineWebber also argues that the court improperly applied the doctrine of irreparable harm because under the circumstances of this case either PaineWebber had established irreparable harm or irreparable harm was not required to be established.[11]

It is not necessary to consider all of the various claims of PaineWebber or the Charts' responses thereto, because we reach the merits of the controversy between the parties regarding the scope of their arbitration agreements, and we conclude that the parties' agreements provide for arbitration before the AAA as a matter of law. We therefore affirm the judgment on a ground different from that relied on by the trial court. *Cheshire* v. *McKenney*, 182 Conn. 253, 261, 438 A.2d 88 (1980).

of PaineWebber's request of them to do so and, thereafter, made an invalid election by designating two fora.

Waiver is a question of fact for the trial court in the first instance, subject to limited appellate review, unless the facts establish waiver as a matter of law. The record presented does not establish waiver as a matter of law, and the trial court made no explicit finding regarding waiver. It is possible to read the decision of the trial court as either having implicitly rejected or having bypassed PaineWebber's claim of waiver, since the court decided that PaineWebber had not established irreparable harm. Faced with this ambiguity, it was PaineWebber's responsibility to request the trial court to articulate its decision further and to seek an explicit finding of waiver vel non that would then constitute an adequate record reviewable on appeal. PaineWebber's failure to do so precludes review of this claim on appeal.

[11] More specifically, PaineWebber argues that: (1) compelling it to go through arbitration before a body that lacks the power to hear the matter constitutes irreparable harm as a matter of law; (2) such harm is not legally required for the issuance of a permanent injunction; (3) the dispute between the parties is governed by the Federal Arbitration Act; 9 U.S.C. § 2 et seq.; under which a permanent injunction against an unauthorized arbitration may be granted without an additional showing of harm; (4) a state requirement of such an additional showing is preempted by the federal act; (5) if the Connecticut arbitration statutes; General Statutes § 52-408 et seq.; govern, they do not require a showing of irreparable harm; (6) this case, although nominally one for a permanent injunction, essentially is one for specific performance of a choice of forum contractual provision; and (7) denial of injunctive relief will waste judicial resources, since an award by the AAA will have to be vacated on appeal.

The parties' agreements provided for "arbitration in accordance with the rules then in effect of . . . the . . . American Stock Exchange, Inc. . . ." Article VIII, § 2, of the constitution of the Amex provides as follows: "Arbitration shall be conducted under the arbitration procedures of this Exchange, except as follows . . . (c) if any of the parties to a controversy is a customer, the customer may elect to arbitrate before the American Arbitration Association in the City of New York,[12] unless the customer has expressly agreed, in writing, to submit only to the arbitration procedure of the Exchange." This provision of the Amex constitution is what is known as the "Amex window." The dispositive issue in this case is whether, under the agreements of the parties, the Amex window is open or closed; that is, whether, as the Charts claim, the reference in the parties' agreements to the "rules" of the Amex was intended to incorporate § 2 (c) of Article VIII of the Amex constitution and was not intended to constitute an agreement to submit "only" to the arbitration procedures of the Amex, or whether, as PaineWebber maintains, the reference to the Amex "rules" was not intended to incorporate § 2 (c) of Article VIII and was intended to constitute an agreement to submit "only" to the arbitration procedures of the Amex. We conclude that, because the parties agreed that New York law would govern the construction and enforcement of their agreements and because New York law is clear that under these agreements the Amex window is open, the agreements between the parties must be construed accordingly.

We first consider our scope of review of the agreements. The construction of an arbitration agreement presents a question of the intention of the parties. See *A. Dubreuil & Sons, Inc.* v. *Lisbon,* 215 Conn. 604, 608,

---

[12] PaineWebber purports to claim on appeal, solely by way of a one sentence footnote in its brief, that "even if arbitration before the AAA is somehow found to be appropriate, the AMEX Window contemplates arbitration

577 A.2d 709 (1990). Ordinarily, "the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and an inference of fact." *Bead Chain Mfg. Co. v. Saxton Products, Inc.,* 183 Conn. 266, 274–75, 439 A.2d 314 (1981); see also *A. Dubreuil & Sons, Inc. v. Lisbon,* supra, 605; *Bowman v. 1477 Central Avenue Apartments, Inc.,* 203 Conn. 246, 257, 524 A.2d 610 (1987). Since we do not engage in the factfinding process, we would under most circumstances be precluded from drawing such an inference. That limitation on our function does not apply, however, where the contract language is definitive, that is, where the trial court could have reasonably reached but one conclusion. *Bead Chain Mfg. Co. v. Saxton Products, Inc.,* supra; see also *Finley v. Aetna Life & Casualty Co.,* 202 Conn. 190, 199, 520 A.2d 208 (1987). The contract language in this case is susceptible to but one construction because of the decision of the New York Court of Appeals in *Cowen & Co. v. Anderson,* 76 N.Y.2d 318, 558 N.E.2d 27, 559 N.Y.S.2d 225 (1990).

In *Cowen & Co.,* the court was confronted with the precise issue posed by this case. The plaintiff securities trader sought to stay an arbitration by the AAA that had been elected by the defendant, the plaintiff's customer. The agreements between the parties provided for "arbitration in 'accordance with the rules, then in effect' of the New York Stock Exchange, or the American Stock Exchange or the National Association of Securities Dealers." Id., 320–21. The plaintiff claimed that the defendant was limited to arbitration before the three named entities, and the defendant, relying on an open Amex window, claimed that he was

only before the AAA in New York City, *not* before the AAA in Hartford." (Emphasis in original.) We decline to consider this claim because: (1) a fair reading of the trial court record in this case indicates that this claim was not distinctly raised in the trial court; and (2) we do not regard PaineWebber's footnote as an adequate briefing of the issue.

authorized to select the AAA. The court held that: (1) article I, § 3 of the Amex constitution "defines the term 'rules of the Exchange' to 'include *the Constitution* and all rules adopted pursuant thereto' "; (emphasis in original) id., 321; and (2) "[i]nasmuch as [the defendant] did not agree to limit the arbitration to the self-regulating organizations, the plain language of the stock and margin agreements grant[s] him the right under the Amex constitution to elect to arbitrate the dispute before the AAA." Id., 322.

The *Cowen & Co.* court rejected the plaintiff's reliance on several federal cases for the proposition that the parties' agreements overrode the Amex window and limited arbitration to one of the three self-regulating organizations. See *Merrill Lynch, Pierce, Fenner & Smith* v. *Georgiadis,* 903 F.2d 109 (2d Cir. 1990); *PaineWebber, Inc.* v. *Pitchford,* 721 F. Sup. 542 (S.D.N.Y. 1989), aff'd sub nom. *PaineWebber, Inc.* v. *Rutherford,* 903 F.2d 106 (2d Cir. 1990); *Piltch* v. *Merrill Lynch, Pierce, Fenner & Smith,* 714 F. Sup. 537 (D.D.C. 1989). The court read those cases as illustrating that the securities traders could have specifically limited the arbitration fora to one of the three named organizations but had not done so, and the court stated that since the term "rules" was not defined or limited by the agreements the customers were entitled to rely on the Amex window. *Cowen & Co.* v. *Anderson,* supra, 323. Similarly, the court declined to follow other federal cases that construed customer agreements as closing the Amex window; see *Hybert* v. *Shearson Lehman/American Express, Inc.,* United States District Court, N.D. Illinois, Docket No. 84C10327 (June 8, 1989); *Bear Stearns & Co.* v. *N. H. Karol & Associates,* 728 F. Sup. 499, 500, 503–504 (N.D. Ill. 1989); *PaineWebber, Inc.* v. *Astrella,* United States District Court, New Jersey, Docket No. 89-2268 (September 6, 1989); but instead rested its decision on the clear language of the contract and, assuming an ambiguity, on

the proposition that such an ambiguity would be construed most strongly against the drafter, namely, the plaintiff. *Cowen & Co.* v. *Anderson,* supra.

We conclude that *Cowen & Co.* v. *Anderson,* supra, controls this case. We first note that the three agreements of the parties must be read together because they interlock and overlap. They all contained essentially the same arbitration clause. See footnotes 4 and 6, supra. Furthermore, both of the client option agreements defined their relationship to the client agreement as supplementing the client agreement and not diminishing any of the customer's rights thereunder. See footnote 5, supra.[13] The client agreement, moreover, provided that "[a]ll transactions made for the account(s) of the undersigned shall be governed by the terms of this agreement." See footnote 3, supra.

Thus, the choice of law provision of the clients agreement must be read as applying to all transactions between the parties, and to the construction and enforcement of their agreements, including the arbitration clauses. That choice of law provision stated that those agreements and their enforcement "shall be construed and governed by the laws of the State of New York . . . ." *Cowen & Co.* expresses in unmistakably clear terms the New York law that governs the interpretation of the parties' arbitration agreements.

The arbitration clauses of the agreements in this case are essentially identical to those in *Cowen & Co.* We therefore must read them as having the same meaning as those in that case. As in *Cowen & Co.,* furthermore, any ambiguity must be resolved against PaineWebber, which drafted the agreements. Moreover, the applicable provisions of the Amex constitu-

---

[13] Paragraph 17 of the client option agreements also provided that "[i]n the event of any conflict between the terms of this Agreement and the terms of the Client's Agreement, the provisions of this Agreement shall prevail." We can perceive no conflict, however, between the client option agreements and the client's agreement with respect to the arbitration clauses.

tion in this case are identical to those involved in *Cowen & Co.,*[14] and PaineWebber relies on many of the same federal cases that the court in *Cowen & Co.* declined to follow as a matter of construction of the agreements under New York law. See, e.g., *Merrill Lynch, Pierce, Fenner & Smith, Inc.* v. *Georgiadis,* supra; *PaineWebber, Inc.* v. *Rutherford,* supra; *Bear Stearns & Co.* v. *N. H. Karol & Associates,* supra; *PaineWebber, Inc.* v. *Pitchford,* supra; *Piltch* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.,* supra. Thus, we are likewise constrained to decline to follow those cases. There can be no question, therefore, that as a matter of New York law these agreements provided for an open Amex window, and that the Charts were entitled to rely on that window in choosing the AAA as the arbitration forum.

The judgment is affirmed.

In this opinion the other justices concurred.

[14] As indicated in *Cowen & Co.* v. *Anderson,* 76 N.Y.2d 318, 558 N.E.2d 27, 559 N.Y.S.2d 225 (1990), the record in this case indicates that Article I, § 3 (a) of the Amex constitution provides: "The term 'rules of the Exchange' shall include the Constitution and all rules adopted pursuant thereto."