[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FORTHE ENTRY OF A QUALIFIED DOMESTIC RELATIONS ORDER
The issue is should the court grant the defendant's motion for a Qualified Domestic Relations Order (QDRO) and for contempt where the plaintiff has removed the defendant as his pension beneficiary allegedly in violation of the court's judgment incorporating the parties' stipulation?
The court enters a QDRO in favor of the defendant and denies the motion for contempt as academic at this time.
On February 14, 1985, the court, Ryan, J., entered a judgment of dissolution of marriage, granting the plaintiff, Eugene Murphy ("husband"), a divorce from the defendant, Frances B. Murphy ("wife"). During the court proceedings, the husband was represented by Attorney Francis X. Shea, and the wife appeared pro se. Incorporated into the 1985 judgment was a separation agreement, dated December 14, 1984, prepared by the husband's attorney that, inter alia, divided the parties' marital property and provided for the payment of alimony by the husband to the wife. The pertinent paragraph of the agreement reads as follows:
15. ALIMONY
 The Husband shall pay the Wife Five Hundred ($500.00) Dollars per month alimony until she dies or remarries.
 The Wife is to remain the beneficiary under the Husband's pension plan, as long as Husband is employed by his present employer CT Page 9350 and after any retirement from this same employer.
In her memorandum of law in support of her June 5, 1995 motion, at page 2, the wife recites that "[i]n January, 1995, the . . . [husband] retired from American Cyanamid. Unbeknownst to the . . . [wife], she was removed as the Contingent Annuitant of the pension plan. It is the position of the . . . [wife] that her removal as the Contingent Annuitant violates the Order of this Court, a fact for which the . . . [husband] should be held in contempt." In addition, pursuant to the language of paragraph 15, the wife moves the court to enter a Qualified Domestic Relations Order (QDRO), pursuant to29 U.S.C. § 1056(d)(3)(A), forcing the husband to confer full pension beneficiary status upon the wife.
In his opposition memorandum, dated June 16, 1995, the husband argues that "[t]he terms of the original order are clear that the only reason Frances Murphy would be designated a beneficiary of pension rights available to her former husband would be to secure the payment of the alimony provided for in the decree." (Husband's memorandum, p. 4.) He further asserts that the parties' intent that, after his death, the $500 per month alimony payment be made out of the pension funds is evidenced by the inclusion of the pension language in the alimony clause as opposed to the property distribution clause. In addition, the husband suggests that the court's order cannot conform to the requirements of a QDRO, therefore, the motion should be denied.
I. QDRO
Under ERISA, the general rule is that pension plan benefits cannot be assigned or alienated in any way. (29 U.S.C. § 1056(d)(1).) The prohibition does not apply, however, if the assignment is accomplished pursuant to a QDRO. Id., Sec. 1056(d)(3)(A); see also Guidry v. Sheet Metal Workers NationalPension Fund, 493 U.S. 365, 377 n. 18, 110 S.Ct. 680,107 L.Ed.2d 782 (1990). The QDRO "recognizes the existence of an alternate payee's right to or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under" a pension plan. (29 U.S.C. § 1056(d)(3)(B)(i)(l).) The phrase domestic relations order ("DRO") "means any judgment, decree, or order which" relates to the provision of alimony payments or marital property rights to a spouse or former spouse. Id., Sec. 1056(d)(3)(B)(ii)(l). CT Page 9351
The separation agreement in this case provides that "[t]he Wife is to remain the beneficiary under the Husband's pension plan, as long as Husband is employed by his present employer and after any retirement from this same employer." The husband suggests that this clause refers to a $500 cap on post-mortem benefits payable to the wife based on its inclusion in the alimony section, whereas the wife argues that it entitles her to a full pension beneficiary status.
"Where the terms of a contract are fairly susceptible of two or more interpretations, the one which is the more equitable, reasonable and rational is to be preferred." Game-A-TronCorporation v. Gordon, 2 Conn. App. 692, 694-95, 483 A.2d 620
(1984). It is undisputed that the husband's attorney drafted the agreement; therefore, where there are ambiguities in the document they may be construed "most strongly against the drafter."PaineWebber, Inc. v. American Arbitration Assn., 217 Conn. 182,191-92, 585 A.2d 654 (1991). This is so since "[t]he party who actually does the writing presumably will be guided by his own interests and goals in the transaction." Game-A-Tron Corporationv. Gordon, supra, 2 Conn. App. 695.
The husband could have included in the separation agreement an indication that the post-mortem benefits received by the wife would be capped at $500 per month. See29 U.S.C. § 1056(d)(3)(B)(i)(l) (alternate payee may receive "all or aportion of the benefits payable with respect to a participant under" the pension plan). (Emphasis added.) This, however, he chose not to do. One reason offered by the wife in support of the husband's failure to include a cap on the wife's benefits is that the wife was a homemaker for nearly thirty years during the parties' marriage. This fact foreclosed her from earning social security credits that would translate into greater social security benefits in the future. Therefore, the post-mortem benefits she received from the husband's pension would serve to supplement her income. This is a plausible explanation for the omission of a cap on the wife's post-mortem benefits.
Since the court may construe the language of the separation agreement "strongly" against the husband, the more equitable, reasonable and rational reading of the agreement is to grant the wife exactly what the clause says, a full beneficiary interest in the husband's pension. Therefore, the court enters a QDRO in favor of the wife so that the pension administrator can properly assign her the status of sole beneficiary. CT Page 9352
II. CONTEMPT
The wife also requests that the court hold the husband in contempt for his alleged wilful disobedience of court orders by not naming the wife as beneficiary of the pension.
"Civil contempt is conduct directed against the rights of the opposing party." Bunche v. Bunche, 36 Conn. App. 322, 324,650 A.2d 917 (1994). A finding of contempt in this case "must be established by `sufficient proof' that is premised on competent evidence presented to the trial court and based on sworn testimony." Id. "A finding of contempt is a question of fact." Id.
"Noncompliance with an order of the court alone does not necessarily dictate that a finding of contempt be entered. Marcilv. Marcil, 4 Conn. App. 403, 405, 494 A.2d 620 (1985). For example, the inability to comply is a good defense to a claim of contempt. Mallory v. Mallory, 207 Conn. 48, 57, 539 A.2d 995
(1988). The contemnor must establish that he cannot comply, or was unable to do so. Zivic v. Zivic, 26 Conn. App. 5, 10,596 A.2d 475 (1991); Tatro v. Tatro, . . . [24 Conn. App. 180, 186,587 A.2d 154 (1991)]. It is within the sound discretion of the court to deny a claim of contempt when there is an adequate factual basis to explain the failure. Marcil v. Marcil, supra, 405." Bunche v. Bunche, supra, 325-26.
In the present case, there is an adequate factual basis to explain the husband's failure to designate the wife as the beneficiary of his pension. In fact, the evidence is contained in the wife's filings. Exhibit F attached to the wife's memorandum, a January 25, 1995 letter from the plan administrator at American Cyanamid to the wife, indicates that since a QDRO had not been filed with the administrator, the wife could not be registered as a beneficiary. Since no QDRO existed at the time, it would have been impossible for the husband effectively to name the wife as the beneficiary of the pension. Therefore, based on the inability of the husband to comply with the beneficiary designation requirement absent a QDRO; Bunche v. Bunche, supra, 326; the motion for contempt should be denied.
Based on the foregoing, the court grants the wife's motion for a QDRO and denies her motion for contempt. The wife's attorney is directed to submit to the court a proposed judgment CT Page 9353 to effectuate the orders of the court.
T. Clark Hull, State Trial Referee