OPINION OF THE COURT
Jasen, J.
The issue dispositive of this appeal is whether a broad arbitration clause in a public construction contract which empowers the architect to resolve all contractual disputes submitted by the parties binds those parties to the architect’s *343 determination, notwithstanding a provision in the contract with which the determination conflicts.
Defendant, Central New York Regional Transportation Authority (the Authority), invited bids for a certain liquid handling systems contract as part of a project for the construction of a public bus garage in the City of Syracuse. Prior to the date on which bids were to be submitted, a representative of plaintiff, Maross Construction, Inc. (Maross), informed the Authority’s architect of an apparent ambiguity in the bid documents. While certain contract drawings indicated that the responsibility for the supply and installation of two fiberglass tanks belonged to the general contractor, the bid specifications placed that responsibility upon the so-called liquids handling systems contractor. Maross requested that the matter be clarified by means of an addendum to the bid documents. The architect responded that the bid specifications took precedence and that the minor discrepancy in the drawings did not require that an addendum be issued.
Maross submitted a bid which was the lowest of three submitted. The Authority awarded the liquids handling systems contract to Maross and sent an owner-contractor agreement for its signature. Prior to affixing its signature, however, Maross added a paragraph to the agreement at article 2 which is labeled "the work” and which contains a preprinted clause introducing the description of the "Work required by the contract documents”. The typed language inserted by Maross provided as follows: "The contractor, Maross Construction, Inc., is not responsible for the supplying and installing of fiber-glass tanks V18 and V28 on page H1.4 of the contract drawings, as the drawings specifically place such responsibility with the general contractor.”
Although Maross thus attempted to relieve itself of responsibility for the supply and installation of the tanks, it did not otherwise notify the Authority and, moreover, it did not make any modifications to certain other provisions of the agreement which pertain to the same matter. Article 7 of the owner-contractor agreement, which appears on the signature page and is entitled "Miscellaneous Provisions”, contains an itemization of all the "Contract Documents” stated to "constitute the entire agreement between the Owner and Contractor”. This itemization lists various specifications and drawings which, in turn, specifically include the tanks in question among the liquid handling systems contractor’s responsibilities.
*344 With article 2 thus altered and article 7 and its referenced contract documents left undisturbed, Maross signed the owner-contractor agreement and returned it to the Authority. Without making any protests, corrections or deletions, the Authority added its signature to the agreement and the project eventually commenced. Shortly thereafter, a dispute arose concerning responsibility for the supply and installation of the tanks. When Maross insisted it was not responsible under the provisions of the contract, the Authority requested that the issue be resolved by the architect. Under the "General Conditions of the Contract”, a document explicitly incorporated into the owner-contractor agreement, the parties entrusted broad arbitration powers to the architect. At article 2, paragraph 2.01, entitled "Authority and Duties of Architect”, the "General Conditions” provide in pertinent part: "To resolve all disputes and to prevent litigation the parties to this Contract authorize the Architect to decide all questions of any nature whatsoever arising out of, under or in connection with, or in any way related to or on account of, this Contract (including claims in the nature of breach of Contract or fraud or misrepresentation before or subsequent to acceptance of the Contractor’s Proposal and claims of a type which are barred by the provisions of the Contract), and his decisions shall be conclusive, final and binding on the parties. His decision may be based on such assistance as he may find desirable, including advice of engineering specialists. The effect of his decision shall not be impaired or waived by any negotiations or settlement offers in connection with the question decided, whether or not he participated therein himself, or by any prior decision of others, which prior decisions shall be deemed subject to review, or by any termination or cancellation of this Contract.” (Emphasis added.)
Pursuant to the foregoing authority, the architect accepted documentary submissions from both parties and ultimately concluded that the contractual specifications clearly impose the responsibility for the tanks upon Maross. The architect directed Maross to return to work and to provide the tanks in question without extra cost.
Maross refused to comply with the architect’s directives and, instead, commenced this action seeking a declaration that it is not responsible under the contract for supplying and installing the tanks. On cross motions for summary judgment, Special Term granted judgment to the Authority. The court found that Maross knew and understood the terms of the *345 contract as intended and drafted by the Authority, and ruled that Maross had no power to alter a substantial term of a public contract subject to competitive bidding as it had attempted to do. On appeal, the Appellate Division reversed and awarded summary judgment to Maross. That court held that the Authority had bound itself to the disclaimer provision added by Maross when it affixed its signature to the contract. The court added, moreover, that the architect’s arbitration authority extends only to the resolution of factual disputes and, therefore, that the architect’s contrary construction of the parties’ contract was not entitled to binding effect. Because we disagree with the Appellate Division’s characterization of the architect’s arbitral authority under the contract in question, we now reverse.
An agreement to submit contractual disputes to arbitration, once viewed adversely as an improper attempt to preclude judicial review even where such was warranted (see, Meacham v Jamestown, Franklin & Clearfield R. R. Co., 211 NY 346), is now well recognized as an effective and expeditious means of resolving disputes between willing parties desirous of avoiding the expense and delay frequently attendant to the judicial process (Matter of Sprinzen [Nomberg], 46 NY2d 623, 629; see also, Matter of Silverman [Benmor Coats], 61 NY2d 299, 307; CPLR art 75). Indeed, wherever the agreement to arbitrate is clearly expressed, a subsequently resistant party will be deemed to have relinquished the right to litigate disputes in the courts and may be compelled, instead, to submit to arbitration. (Matter of Franklin Cent. School [Franklin Teachers Assn.], 51 NY2d 348, 356-357; cf. Matter of Waldron [Goddess], 61 NY2d 181, 183-184.)
Where the parties have expressly agreed to arbitrate their disputes, it remains to be determined whether the subject matter of the dispute is one that may be submitted to arbitration without violation of any law or public policy and, if so, whether it falls within the scope of the arbitration agreement. (See, Matter of Franklin Cent. School [Franklin Teachers Assn.], supra, at p 355.) Hence, where jurisdiction over a particular type of dispute is statutorily bestowed exclusively upon the courts (see, e.g., Matter of Knickerbocker Agency [Holz], 4 NY2d 245; cf. Matter of South Colonie Cent. School Dist. [South Colonie Teachers Assn.], 46 NY2d 521, 525-526) or where judicial, as opposed to arbitral, enforcement of particular rights and prohibitions is mandated by public policy (see, e.g., Board of Educ. v Areman, 41 NY2d 527; Matter of Aimcee *346 Wholesale Corp. [Tomar Prods.], 21 NY2d 621), an agreement to arbitrate will not be given effect by the courts. Otherwise, where no such conflict with law or public policy exists, the courts will enforce the parties’ contractual decision to submit their disputes to arbitration (see, Matter of Sprinzen [Nomberg], supra, at pp 631-632). Moreover, while a specifically enumerated restriction upon arbitral authority will be upheld by the courts (see, Matter of Silverman [Benmor Coats], supra, at p 308; Matter of United Nations Dev. Corp. v Norkin Plumbing Co., 45 NY2d 358, 364), no such limitation upon either factual or legal dispute resolution will be inferred from a broadly worded contractual provision expressly calling for the arbitration of all disputes arising out of the parties’ contract (Matter of Turner [Booth Mem. Hosp.], 63 NY2d 633; Matter of Albany County Sheriff’s Local 775 [County of Albany], 63 NY2d 654; Matter of Silverman [Benmor Coats], supra, at p 308; Matter of Board of Educ. v Dover-Wingdate Teachers’ Assn., 61 NY2d 913).
Finally, the resolution of a dispute properly submitted to arbitration will not so readily be disturbed by the courts. Indeed, an arbitrator’s interpretation of the parties’ contract is impervious to judicial challenge even where "the apparent, or even the plain, meaning of the words” of the contract has been disregarded. (Rochester City School Dist. v Rochester Teachers Assn., 41 NY2d 578, 582.) The arbitrator’s determination may even entail a misapplication of substantive rules of law and still be not subject to being vacated unless the court concludes that it is totally irrational or violative of a strong public policy. (Matter of Silverman [Benmor Coats], supra, at p 308; cf. Garrity v Lyle Stuart, Inc., 40 NY2d 354, 357; Matter of Associated Teachers v Board of Educ., 33 NY2d 229, 235-236.) The foregoing principles, it should be noted, are equally applicable to commercial arbitration in the public and private sector. (See, Matter of Turner [Booth Mem. Hosp.], supra).
Here, the parties expressly agreed to resolve all their disputes by arbitration in the clear and unequivocal language contained in article 2 of the "General Conditions of the Contract”. Maross has not contended otherwise and, moreover, there has been no challenge made to the lawfulness of the arbitration provision or to its conformity with public policy.
Additionally, the language used to describe the architect’s arbitral authority is all-encompassing. The arbitration provi *347 sion empowers the architect to resolve "all questions of any nature whatsoever” which might arise out of the contract, and no specific restriction upon that authority is enumerated. Contrary to the holding at the Appellate Division, such a broad arbitration provision is not limited to the resolution of mere factual questions but, rather, includes within its scope the interpretation of the legal meaning of the contract. Of course, the parties may choose by limiting language to restrict arbitral authority to factual disputes or to those falling within the particular technical competence of an architect, engineer, accountant or other expert serving as the arbitrator. (See, e.g., Joseph Davis, Inc. v Merritt-Chapman & Scott Corp., 27 AD2d 114, affd 23 NY2d 872.) However, there is no general prohibition, emanating either from statute, case law or public policy, against the arbitral resolution of disputes regarding the legal meaning of the parties’ contract if they so agree. (See, e.g., Matter of Albany County Sheriff’s Local 775 [County of Albany], supra; Matter of Silverman [Benmor Coats], supra; Rochester City School Dist. v Rochester Teachers Assn., supra.)
Moreover, it cannot be said that the architect’s determination was totally irrational. Notwithstanding the disclaimer provision added by Maross and regardless of the construction which a court of law might consequently give to the parties’ contract, there is a rational basis for the architect’s decision apparently to give no effect to the added language and to interpret the contract otherwise. Prior to submitting its bid, Maross was clearly advised by the architect that it was responsible for providing the tanks and that the two drawings apparently indicating otherwise were erroneous. Hence, when Maross did submit its bid, it already knew and understood the intention of the Authority and the architect’s interpretation of the bid specifications. Moreover, other drawings clearly place responsibility for the tanks upon Maross as the liquids handling systems contractor and certain contract specifications expressly state that the liquids handling systems contractor must provide the tanks and complete their installation.*
Maross argues that an ambiguity was thus created by the erroneous drawings and should have been resolved against the Authority as the drafter. While this principle of contra profer *348 entem may be a generally valid rule for the judicial construction of contractual provisions (see, 151 W Assoc. v Printsiples Fabric Corp., 61 NY2d 732), it in no way rebuts the test of mere rationality by which an arbitrator’s award must be judged. Here, it cannot be gainsaid that the architect had reasonable grounds, both in the pre-bid communications between the parties and in the drawings and specifications in their contract, upon which to predicate its decision that Maross was responsible for the tanks.
Finally, the fact that the architect chose only to consider the contractual drawings and specifications it deemed relevant and ignored the disclaimer paragraph inserted by Maross does not require a different result. Indeed, unless the arbitrator’s determination is thus rendered totally irrational, a refusal or failure to pass upon an arguably relevant issue or piece of evidence, even if mistaken, is a matter of arbitral judgment which, being part and parcel of the arbitrator’s determination, is not judicially reviewable. (Matter of Raisler Corp. [New York City Hous. Auth.], 32 NY2d 274, 282-283; Lentine v Fundaro, 29 NY2d 382, 385.)
Accordingly, the order of the Appellate Division should be reversed, with costs, and the judgment of Supreme Court reinstated.
Chief Judge Wachtler and Judges Meyer, Kaye, Alexander and Titone concur; Judge Simons taking no part.
Order reversed, etc.

 Contract drawings H1.3 and H1.4, which the architect had advised Maross were erroneous, indicate that the tanks were not Maross’s responsibility. On the other hand, as noted by Special Term, the architect’s conclusion is supported by drawings FE1.2 and FE2.9 and by specifications section 01016, paragraph 1.04, and section 11441, paragraphs 2.08 and 3.01.