HARRY SKOLNICK AND SONS *v.* SAMUEL J. HEYMAN
(3787)

DUPONT, C. J., BORDEN and BIELUCH, Js.

Argued January 7—decision released April 22, 1986

*Jeffrey D. Ginzberg,* with whom, on the brief, was *Arnold M. Potash,* for the appellant (plaintiff).

*Austin K. Wolf,* with whom were *Stewart I. Edelstein* and, on the brief, *Daniel S. Nagel,* for the appellee (defendant).

BORDEN, J. The plaintiff appeals from the judgment of the trial court denying his application to confirm what he claimed to be two arbitration awards. The plaintiff is a contractor which constructed two shopping centers for the defendant. The dispositive issue is whether the identical provision in the two construction contracts between the parties requiring the submission of certain disputes over payment for determination by the projects' architect is an agreement for arbitration, and whether, therefore, the architect's determinations are subject to confirmation pursuant to General Statutes § 52-417. The trial court held that it is not. We agree with the reasoning of the trial court, and find error only in the form of the judgment.

The facts are not in dispute. The parties entered into two contracts pursuant to which the plaintiff constructed shopping centers in Norwalk and New Britain on land owned by the defendant. Article XX of both contracts, set out in full in the footnote,[1] provides for

---

[1] Article XX provides: "20.1 In the event of any dispute of any payment to be made to the Contractor which is not resolved by the parties, then the issue of whether such payment or any part is then due and owing to the Contractor under this Agreement shall be submitted to the Architect, for determination. Upon issuance of a certificate for payment by such Architect, the amount set forth therein shall be paid by Owner to Contractor within five (5) days after receipt by Owner.

"20.2 In the event there should be any dispute between the parties regarding credit to be given to Owner in connection with work not required to be performed under Exhibit C in connection with the Small Stores, said credit shall be determined by the Architect.

"20.3 If the services of the Architect are required, Owner and Contractor each agree to pay fifty (50%) per cent of such fee made by the Architect

the resolution of certain disputes between the parties by the architect. Section 20.1 provides that, with respect to any unresolved dispute regarding payment to the plaintiff, "the issue of whether such payment or any part is then due and owing to the Contractor under this Agreement shall be submitted to the Architect, for determination." Section 20.2 provides that with respect to any dispute regarding certain credit to be given to the defendant, "said credit shall be determined by the Architect." Section 20.3 provides for the equal division of the architect's fees for his services in making these determinations. Other similar contractual provisions commit to the architect the determination of the price of certain change orders on which the parties cannot agree, the determination of certain other disputed additional costs, and the determination of disputed progress payments.

Pursuant to Article XX, the architect rendered two decisions. After payments and credits, the plaintiff claims a balance under these decisions of $247,500.16. The plaintiff sought, by way of a single application, to confirm these decisions as arbitration awards, pursuant to General Statutes § 52-417.[2] The trial court concluded that the agreement between the parties was not an agreement for arbitration, but was an agreement providing that the architect's determination was a condition precedent to the plaintiff's right to payment, after which the plaintiff was required to bring a ple-

referred to herein [sic] shall be conclusive and binding on the parties without right of appeal."

Neither party has addressed the import of the grammatical obscurity of § 20.3. We therefore decline to do so as well.

[2] Although entitled "Order to Confirm Award," the application did not request in its claim for relief that the award be confirmed. See Practice Book, Form 604.17. Instead, the application prayed for (1) judgment in the amount of $247,500.16, (2) judgment for extra work in the amount of $34,981.74, a disputed issue which the architect had declined to resolve, and (3) other appropriate relief.

nary action, and that the summary statutory proceedings to confirm arbitration awards was not applicable.[3] This appeal followed.

We first consider our scope of review. "[A]bsent a statutory warranty or specific contract language, whether there was a contract and the scope of its terms are questions of fact to be determined by the trier on the basis of all the evidence"; *Finley* v. *Aetna Life & Casualty Co.,* 5 Conn. App. 394, 404, 499 A.2d 64 (1985), cert. granted, 198 Conn. 802, 501 A.2d 1213 (1986); and are thus subject to a limited scope of review by this court. *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 427, 488 A.2d 1290 (1985). We conclude that the court's factual conclusions regarding the meaning of the agreement between the parties were not clearly erroneous.

We agree with the plaintiff that it is not determinative that the agreement does not use the term, "arbitration." "An agreement to arbitrate is not required to be stated in any particular form or wording, and the use of technical or formal words is not required." 5 Am. Jur. 2d, Arbitration and Award § 12. In *Covenant Ins. Co.* v. *Banks,* 177 Conn. 273, 280, 413 A.2d 862 (1979), the Supreme Court construed an insurance policy appraisal clause, which did not use the term, "arbitration," as an arbitration clause. The court read our case law definition of "arbitration" broadly, because of the recognition that "[i]t is important as a matter of policy to have a device that allows one party to an insurance contract to compel compliance with the policy's

---

[3] The trial court also determined, because of what can only be seen as a series of clerical and evidentiary mishaps, that only the Norwalk agreement, and not the New Britain agreement, was before the court. The plaintiff raises this determination as an additional claim of error on appeal. We need not consider this claim because of our conclusion that the trial court did not err in its construction of the Norwalk agreement, and because of the stipulation of the parties, which is clear from the record, that the relevant provisions of the New Britain agreement are identical to those of the Norwalk agreement.

appraisal procedure when the other party is reluctant to proceed." Id.

Our cases define "arbitration as 'the voluntary submission . . . of an existing *or future* dispute to a disinterested person or persons for final determination'; (emphasis added.) *Kantrowitz* v. *Perlman,* 156 Conn. 224, 226, 240 A.2d 891 (1968)." *Covenant Ins. Co.* v. *Banks,* supra; *Gary Excavating, Inc.* v. *North Haven,* 164 Conn. 119, 121, 318 A.2d 84 (1972). Nor is it determinative that the contractual arrangement of the parties here appears to fit within the general definition of arbitration. As with the construction of any contractual provision, the decisive question is the intent of the parties. *Lavigne* v. *Lavigne,* supra, 427–28.

Although there is no particular form of words required to form an agreement to arbitrate, "the intent of the parties that arbitration be the exclusive method for the settlement of disputes arising under the contract must be *clearly manifested.* This *express intent* by both parties to enter into the arbitration agreement is essential to its existence." (Emphasis added.) Domke, Commercial Arbitration § 5.01, p. 49. An agreement to arbitrate must be clear and direct and not depend on implication. Id; accord *Albers Milling Co.* v. *Barge Antone F,* 487 F. Sup. 37 (W.D. Wash. 1980) ("no valid arbitration unless the parties have expressly contracted to use this method of adjudication of the dispute") *Maross Construction, Inc.* v. *Central New York Regional Transportation Authority,* 66 N.Y.2d 341, 345, 488 N.E.2d 67, 497 N.Y.S.2d 321 (1985) (when agreement to arbitrate is "clearly expressed," parties may be compelled to submit to arbitration).

In this case, the trial court did not find a clearly expressed intent of the parties to use the services of the architect as an arbitrator. Instead, the court found that they intended that his determinations would con-

stitute a condition precedent to the plaintiff's right to payment, and that they intended those determinations to be enforceable, not by the summary statutory proceedings for confirmation of arbitration awards, but by a plenary action based on those decisions. In such an action, the architect's determinations will be binding on the defendant if they were made in good faith. *Dahl* v. *Edwin Moss & Son, Inc.*, 136 Conn. 147, 153–54, 69 A.2d 562 (1949); *Chatfield Co.* v. *O'Neill*, 89 Conn. 172, 173, 93 A. 133 (1915). These factual findings of the trial court are reasonably drawn from the language of the agreement and its surrounding circumstances. We cannot conclude that the intent of the parties is so clearly manifested as to render these findings clearly erroneous. We therefore decline to disturb the decision of the trial court in this respect.

The trial court denied the plaintiff's application to confirm the architect's determinations as arbitration awards. Since the court had no jurisdiction under the arbitration statute to confirm these nonarbitration determinations, the plaintiff's application should have been dismissed, rather than denied.

There is error in the form of the judgment, the judgment is set aside and the case is remanded with direction to render judgment dismissing the plaintiff's application.

In this opinion the other judges concurred.