[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM RE: MOTION TO CONFIRM ARBITRATOR'S AWARD
On February 6, 1991, the plaintiffs, David Balch and William Angell, filed a complaint against the defendant, Kim Zukerman, d/b/a The Blackberry River Inn ("the Inn"), in which they alleged, inter alia, that in August, 1988, they entered into an agreement whereby the plaintiffs promised to restore and paint the Inn in consideration for $14,500.00. The plaintiffs alleged that the defendant refuses to make payment on the $8,125.00 she then owed them On March 28, 1991, the defendant answered the complaint and filed a counterclaim in which she alleged, inter alia, that the plaintiffs' work was sloppy and incomplete. The defendant also admitted the existence of the aforementioned contract. On April 5, 1991, the plaintiffs answered the counterclaim.
On August 27, 1991, this court recommended that the parties attend arbitration to resolve this matter and, on or before September 24, 1991, counsel for both parties informed this court that binding arbitration was acceptable to each.
Thereafter, counsel for each party mutually agreed upon Attorney Vincent Diana of Manchester as arbitrator. Plaintiff's counsel, Attorney Karen Gersten, forwarded to Attorney Diana a check for $250.00, said amount representing one-half of Attorney Diana's fee. Defendant's counsel, Attorney Philip Hart, informed Ms. Gersten that he, too, CT Page 2067 would forward $250.00 to Attorney Diana. Plaintiffs' Exhibit A (September 23, 1991 letter from Mr. Hart to Ms. Gersten). Counsel for both parties agreed that arbitration would take place on October 31, 1991. Plaintiffs' Exhibit A, supra, and B (October 10, 1991 letter from Mr. Hart to Ms. Gersten). However, on October 31, 1991, Mr. Hart informed Ms. Gersten that, because "[he] will be on trial in Federal Court in Bridgeport at that time. . .[he] would submit that November 14th is [his] next available date [on which to arbitrate this matter]." Mr. Hart requested that Ms. Gersten confer with Mr. Diana to reschedule for that time. Plaintiffs' Exhibit B. The arbitration was rescheduled for November 14, 1991, at 11:00 a.m., and Mr. Hart informed Ms. Gersten that he would be present. Plaintiffs' Exhibit C (October 24, 1991 letter from Mr. Hart to Ms. Gersten). Mr. Hart then requested that arbitration be rescheduled until 2:00 p.m. on November 14, 1991. Plaintiffs' Exhibit D (November 7, 1991 letter from Mr. Hart to Ms. Gersten; said letter was "carbon copied" to Mr. Diana). On November 14, 1991, the date on which arbitration was to proceed, Mr. Hart informed Ms. Gersten that he and his client would not proceed with binding arbitration. Plaintiffs' Exhibit E (November 14, 1991 letter from Mr. Hart to Ms. Gersten)
The plaintiffs proceeded to arbitration despite the absence of the defendant. The arbitrator entered an award for the plaintiffs in the amount of $8528.20 and, on November 25, 1991, the plaintiffs filed a motion to confirm the arbitration award. Said motion was opposed by the defendant.
The question before this court is whether the defendant is bound by any agreement to submit the aforementioned matter to binding arbitration. The plaintiffs contend that a contract to arbitrate was entered into, that said contract cannot be unilaterally revoked, and that the plaintiffs relied, to their detriment, on this contract to arbitrate. Therefore, the plaintiffs want the arbitrator's decision confirmed. The defendant argues that no contract to enter binding arbitration was formed and, therefore, the plaintiffs' motion to confirm the arbitrator's award should be denied.
Arbitration is a contractual remedy, the purpose of which is to avoid the formalities, the delay, the expense, and the vexation of ordinary litigation. A. Dubreuil Sons, Inc. v. Lisbon, 215 Conn. 604, 608, 577 A.2d 709 (1990). Arbitration is "`the voluntary submission. . .of an existing or future dispute to a disinterested person or persons for final determination.'" Harry Skolnick Sons. v. Heyman,7 Conn. App. 175, 179, 508 A.2d 64 (1986) (citations omitted). CT Page 2068 The scope of a voluntary arbitration proceeding is a creature of contract and the scope of the arbitration issues are set in the contract by the parties not after the fact by the trial court. Bio-Polymers, Inc. v. D'Arrigo, 23 Conn. App. 107,110, 579 A.2d 122 (1990) citing Bic Pen Corp. v. Local No. 134, 183 Conn. 579, 583-84, 440 A.2d 774 (1981).
Additionally:
 "`[A] person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do. . .'" No one can be forced to arbitrate a contract dispute who has not previously agreed to do so. . . The issue of whether the parties to a contract have agreed to arbitration is controlled by their intention. . . .(Emphasis added.)
Lisbon, supra, 608-09.
An agreement to arbitrate "must . . .be in writing, or it is invalid." Bennett v. Meader, 208 Conn. 352, 364,545 A.2d 553 (1988). Furthermore:
 Although there is no particular form of words required to form an agreement to arbitrate, `the intent of the parties that arbitration be the exclusive method for the settlement of disputes arising under the contract must be clearly manifested. This express intent by both parties to enter into the arbitration agreement is essential to its existence' (Citations omitted.)
Heyman, supra. Additionally, "[a]n agreement to arbitrate must be clear and direct and not depend on implication." Id., 179. Indeed, "[t]he construction of an arbitration agreement presents a question of the intention of the parties. . . . Ordinarily, `the determination of what the parties intended to encompass in their contractual commitments is a question of the intention of the parties, and inference of fact.'" Paine Webber, Inc. v. American Arbitration Ass'n, 217 Conn. 182, 189-90, 585 A.2d 654 (1991) (citations omitted).
The existence of a contract to arbitrate is a question for the court. Atkinson v. Sinclair Ref. Co., 370 U.S. 238, 241,82 S.Ct. 1318, 1320, 8 L.Ed.2d 462, 465-66 (1962); Torrington Co. v. Metal Prod. Workers Union Local 1645, 347 F.2d 93, 96 (1965), cert. denied, 382 U.S. 940, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965). CT Page 2069 Whether or not a contract was entered into is determined by "[t]he intention of the parties manifested by their words and acts," Hess v. Dumouchel Paper Co., 154 Conn. 343, 347, 225 A.2d 797 (1966). see also Garrison v. Garrison, 190 Conn. 173, 175, 460 A.2d 945
(1983), and the intention of the parties is a question of fact. Lisbon, supra, 609. The "assent requisite to the creation of a contract is an objective thing, manifested by intelligible conduct, act, or sign; it is not determined by secret intentions but by expressed or manifested intentions." Alteri v. Layton,35 Conn. Sup. 258, 259, 408 A.2d 17, 18 (1979, Spada, J.)
In the present matter, the discussions before this court and the letters from Mr. Hart to Ms. Gersten indicate the formation of a contract to submit this matter to binding arbitration. See, e.g., Plaintiffs' Exhibits A, B, C, D, E, supra. Indeed, Mr. Hart's own language implicitly acknowledges the formation of a contract:
 . . . [A]lthough I would admit I entered an agreement to submit the claim to binding arbitration, the agreement to arbitrate the claim was not binding. (Emphasis added.)
Plaintiffs' Exhibit E, supra. Thus, the parties apparently reached an oral agreement to arbitrate, and said agreement was subsequently confirmed in writing by virtue of the letters between Mr. Hart and Ms. Gersten. See Plaintiffs' Exhibits A, B, C, D, E, supra. Consequently, a valid contract to submit to binding arbitration was created. See, e.g., Bennett, supra.
Furthermore, an attorney has the "authority, by virtue of his employment as such, to do on behalf of his clients all acts, in or out of court, necessary or incidental to the prosecution or management of the suit, and which affect the remedy only, and not cause of action." Cohan v. Czuchnowski, 2 Conn. Cir. 160,107 A.2d 610 (1963). See also Varley v. Varley, 189 Conn. 490, 493,457 A.2d 1065 (1983) (stating that parties are bound by the procedural acts of their counsel). Thus, because the decision to submit this matter to arbitration affects the remedy, and not the cause of action, in this case Mr. Hart had the authority to contract to enter binding arbitration.
Because it has been determined, supra, that the parties entered into a valid agreement to arbitrate, such agreement could not, unilaterally, be disregarded. Indeed, any written agreement to arbitrate is valid, irrevocable and enforceable, except where there exists sufficient cause at law or in equity for said contract's avoidance. See General Statutes 52-408; International Bhd. of Teamsters v. Shapiro, 138 Conn. 57, 63, 82 A.2d 345 (1951); Atwell-Monte Caisson Corp. v. Merritt, Champden and Scott Corp.,5 Conn. Sup. 174, ___ A. ___ (Super.Ct. 1937). Justifiable reasons CT Page 2070 for declaring an agreement to arbitrate void include fraud, misrepresentation, duress or undue influence. Dewart v. Northeastern Gas Transmission Co., 140 Conn. 446, 449, 101 A.2d 299
(1953). Because none of the aforementioned reasons for declaring this agreement void have been raised, nor do such reasons appear to exist, the defendant is bound by this contract.
As was noted, supra, one who has not previously agreed to arbitrate cannot be forced to do so. Lisbon, supra. However, where "there is such an agreement [to arbitrate] the court is empowered to direct compliance with its provisions." Ginsberg v. Coating Products. Inc., 152 Conn. 592, 596, 210 A.2d 667 (1965). However, in the present matter, the plaintiffs alone prepared the submission to the arbitrator, and the defendant never participated in the arbitration proceedings. Consequently, the decision of the arbitrator is vacated, and the parties are ordered to submit to binding arbitration before a newly selected arbitrator, with all costs to be paid by the defendant.
DRANGINIS, JUDGE