[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action, plaintiff subcontractor instituted a four count complaint against defendant general contractor, alleging breach of contract, detrimental reliance thereon, fraudulent CT Page 11054 misrepresentation, and CUTPA violations. Defendant denied the principal allegations of plaintiff's complaint and also filed special defenses in which it alleged misrepresentation on the part of the plaintiff, and that no contract was entered into by the parties, and that plaintiff failed to pursue administrative remedies under the provisions of Conn. Gen. Stat. § 4b-100. Plaintiff denied defendant's special defenses.
Defendant was one of the general contractors submitting a bid to the Department of Public Works ("DPW") for the construction of a physical plant at the University of Connecticut. By statute (§ 4b-93, C.G.S.), the contractor must include in his general bid the names of subcontractors for specific categories of work and their respective bid prices. In the instant matter, defendant submitted a bid for the job which listed plaintiff as the subcontractor for HVAC (heating, ventilation and air conditioning) at a price of $420,000.00.
Bid opening at DPW was scheduled for 1:00 p. m. on March 24, 1993. Defendant was one of approximately twelve general contractors preparing to submit a bid on this job. (See Plaintiff's Exhibit #5). Plaintiff was preparing to submit its bid for HVAC portion of the project to the twelve general contractors for the price of $420,000.00 with certain exceptions. A vice-president of plaintiff commenced faxing its bid of $420,000.00 together with the listed exclusions to the general contractors approximately 45 minutes before the bids were to be opened at DPW. The testimony indicated that fax lines were busy at a few of the general contractors and plaintiff proceeded to telephone these general contractors. Bruce Robbins, a vice-president of plaintiff company, testified that he called the remaining general contractors and orally gave them the quotation of $420,000.00 for the HVAC portion of the job together with the exceptions listed on its faxed memo (Plaintiff's Exhibit #4) to the other general contractors.
The evidence indicates that plaintiff's telephone call to the defendant was made at 12:24 p. m. on March 24, 1993 and lasted one minute or less. (Defendant's Exhibit #B). Said exhibit indicates that telephone calls were made to other general contractors at 12:22 p. m. and 12:23 p. m. Defendant's project manager and chief estimator was seated alongside another employee receiving the telephone quotations from subcontractors and he testified that the telephone quotes are written on a form as they are received. Defendant admits receiving the CT Page 11055 telephone quotation from plaintiff in the amount of $420,000.00 for HVAC, but claims that there were no exclusions presented in the telephone quotation. (Defendant's Exhibit #D).
The end result of this chaotic process requires defendant to compile all the subcontractors' bids in order to submit its total bid for the project, together with the listed subcontractors, to the DPW prior to the 1:00 p. m. deadline for bid opening. Defendant was the apparent low bidder for the project and listed plaintiff as the HVAC subcontractor for the price of $420,000.00.
Having been listed as the subcontractor for HVAC at the price of $420,000.00, plaintiff claims that it had a conditional contractual right to this job and awaited the execution of the contract between the defendant and the State of Connecticut through its Department of Public Works, which was executed on May 21, 1993.
Subsequently, on May 27, 1993, defendant alleges that it first learned of the claimed exclusions from the plaintiff and requested a copy of the fax memo (Plaintiff's Exhibit #4) which had been sent to other general contractors. On June 2, 1993, defendants notified plaintiff that it no longer was the low bidder for HVAC, and defendant sought DPW permission to substitute another subcontractor of the HVAC portion of the project. DPW denied permission to substitute for a listed subcontractor unless it was done in accordance with § 4b-95 (c), C.G.S.
Thereafter, on July 28, 1993, defendant sent plaintiff a contract document for the full scope of alleged HVAC work on this project, which plaintiff amended to remove the scope of work set forth in its exclusions. Defendant considered the amended contract to be a rejection of the offered contract, and again requested DPW's permission to substitute another subcontractor for HVAC due to plaintiff's alleged refusal to enter into a subcontract agreement. On August 6, 1993, DPW approved the requested substitution of O'Neil Mechanical Company for a price of $389,000.00 (which price listed almost identical exclusions that plaintiff listed).
Plaintiff alleged it was ready, willing and able to enter into a contract with defendant for the sum of $420,000.00 to perform the HVAC work subject to its list of exclusions. CT Page 11056 The issue before the court was whether the listing of plaintiff as the HVAC subcontractor on defendant's general bid rose to the level of creating a contract upon which plaintiff could maintain this action.
The existence of a contract is a question of fact to be determined by the trier on the basis of all the evidence.Fortier v. Newington Group, Inc., 30 Conn. App. 505, 509
(1993); Harry Skolnick Sons v. Heyman, 7 Conn. App. 175, 178
(1986). In order for an enforceable contract to exist, the court must find that the parties' minds had truly met. "If there has been a misunderstanding of the parties, . . . so that their minds have never met, no contract has been entered into by them and the court will not make for them a contract which they themselves did not make." Hoffman v. Fidelity CasualtyCo., 125 Conn. 440, 443-444 (1939). "An agreement must be definite and certain as to its terms and requirements." Dunham v.Dunham, 204 Conn. 303, 313 (1987).
In the instant action, there was an obvious lack of communication between the parties related to the listed exclusions claimed by plaintiff in its bid submission to defendant by way of a telephone quotation. Plaintiff did not follow up its oral bid with a written memo listing the exclusions and defendant claims it did not learn of the exclusions until May 27, 1993, more than two months after the bid opening. Accordingly, the court concludes that plaintiff and defendant never truly had a meeting of the minds regarding the HVAC portion of the project, and thus, no contract had ever been entered into by the parties. Further, without such a contract, there was nothing to be breached by the defendant.
Plaintiff also claimed that defendant violated the provisions of §§ 4b-93 through 4b-100, C.G.S., in that defendant failed to submit a subcontract within the appropriate time and in accordance with the form set forth in § 4b-96, and failed to substitute subcontractors in accordance with § 4b-95. The competitive bidding laws are enacted to guard against such evils as favoritism, fraud or corruption in the award of contracts, to secure the best product at the lowest price, and to benefit the taxpayers, not the bidders.
Our Supreme Court has declared that "a bid, even the lowest responsible one, submitted in response to an invitation for bids is only an offer which, until accepted by the municipality, CT Page 11057 does not give rise to a contract between the parties."John J. Brennan Construction Corporation, Inc. v. Shelton,187 Conn. 695, 702 (1982). An unsuccessful bidder, therefore, has no legal or equitable right in the contract. Ardmare ConstructionCo. v. Freedman, 191 Conn. 497, 502 (1983).
Defendant's failure to strictly comply with the statutory provisions related to competitive bidding does not give plaintiff any right to maintain this action without any finding of favoritism, fraud or corruption. In view of the court's conclusions that this dispute arose out of a lack of a meeting of the minds on plaintiff's bid, and not as a result of any fraudulent intent on the part of the defendant to bid shop and increase its profit, plaintiff has not sustained its burden of proof on the alleged breach of contract, and has no standing to maintain a private action relating to any alleged statutory violations pertaining to the bidding procedure without any finding of fraud.
Accordingly, judgment may enter for the defendant.
JOSEPH H. GOLDBERG SENIOR JUDGE