[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S APPLICATIONFOR ORDER TO PROCEED WITH ARBITRATION ANDAPPOINT AN ARBITRATOR DATED APRIL 11, 1997
In this case, the plaintiff, Alca Construction Company, Inc., pursuant to an April 11, 1997 application, has moved for an order to proceed with arbitration and appoint an arbitrator. The defendant Housing Authority of the City of Waterbury objects to the application, asserting that it has never agreed to arbitrate.
Many of the pertinent facts are set out in plaintiff's May 19, 1997 brief in support of its application. As recited by the plaintiff, in summary, this matter relates to a major construction contract between the Housing Authority of the City of Waterbury (hereinafter "WHA") and Alca Construction Company, Inc. (hereinafter "Alca"). According to plaintiff's recitation, the parties entered into a construction contract which called for the renovation of six buildings in a Waterbury public housing project known as Berkley Heights. The WHA received funding for the project from the Federal Department of Housing and Urban Development ("HUD"), and the WHA agreed to abide by HUD's rules and regulations governing the funding of such projects. Alca submitted a winning bid of $10,477,500 and the parties entered into a contract on April 22, 1993. According to plaintiff, HUD regulations require that local housing authorities receiving HUD funding use certain contract forms contained in its procurement handbook for all construction contracts let pursuant to HUD funding, and specifically provide that such forms may not be modified without written HUD approval.
Plaintiff essentially makes two claims. Plaintiff argues, first, that Article 31 of HUD form 5370, "General Conditions of the Contract for Construction," contains language constituting an agreement between the parties to arbitrate in this case. Noting that arbitration is looked upon favorably as a viable alternative to protracted litigation, plaintiff argues that the contract — in particular Article 31 — must be read to mean the parties have agreed to arbitrate. See pages 4-11 of plaintiff's May 19, 1997, Brief in Support, and cases cited therein. Where there is a question as to whether arbitration has been agreed to, plaintiff argues, see e.g. Board of Education v. Frey, 174 Conn. 578, 581-82
(1978) (order to arbitrate a particular grievance should not CT Page 6348 be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute) (emphasis in original), doubts should be resolved in favor of coverage. Second, plaintiff argues that because defendant initially agreed to submit this matter to arbitration, it is prohibited from objecting to arbitration in this case. Both arguments are unpersuasive.
Plaintiff relies principally on Section (e) of Article 31, "Disputes," in support of its first claim — that the parties agreed to arbitrate. Article 31 reads as follows:
31. Disputes
 (a) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of the contract terms, or other relief arising under or relating to the contract. A claim arising under the contract, unlike a claim relating to the contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim. The submission may be converted to a claim by complying with the requirements of this clause, if it is disputed either as a liability or amount or is not acted upon in a reasonable time.
 (b) Except for disputes arising under the clauses entitled Labor Standards and Labor Standards — Nonroutine Maintenance, herein, all disputes arising under or relating to this contract, including any claims for damages for the alleged breach thereof which are not disposed of by agreement, shall be resolved under this
 (c) All claims by the contractor shall be made in writing and submitted to the Contracting Officer for a written decision. A claim by the PHA/IHA against the Contractor shall be subject to a written decision by the Contracting Officer.
 (d) The Contracting Officer shall, within ___ (60 unless otherwise indicated) days after receipt of the request, CT Page 6349 decide the claim or notify the Contractor of the date by which the decision will be made.
 (e) The Contracting Officer's decision shall be final unless the Contractor (1) appeals in writing to a higher level of the PHA/IHA in accordance with the PHA's/IHA's policy and procedures, (2) refers the appeal to an independent mediator or arbitrator, or (3) files suit in a court of competent jurisdiction. Such appeal must be made within (30 unless otherwise indicated) days after receipt of the Contracting Officer's decision.
 (f) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal or action arising under or relating to the contract, and comply with any decision of the Contracting Officer.
As defendant correctly observes, a claim for arbitration must be based on an agreement between the parties in writing that states clearly the intention of the parties to settle by arbitration any controversy arising out of a dispute. See
Connecticut General Statute Section 52-408; Harry Skolnick Sonsv. Heyman, 7 Conn. App. 175, 179 (1986). An agreement to arbitrate "must be clear and direct and not depend on implication." Id. at 179; also see other cases cited by defendant at pages 6-8 of their May 19, 1997 memorandum in opposition, including but not limited to Bennett v. Meader,208 Conn. 352 (1988); A. Dubreuil Sons, Inc. v. Town of Lisbon,215 Conn. 604 (1990); McCaffrey v. United Aircraft Corp. ,147 Conn. 139 (1966). The authority for arbitration must be derived from the agreement of the parties. W.J. Megin, Inc. v. State,181 Conn. 47 (1980). A court cannot create a duty to arbitrate where no agreement to arbitrate exists; courts only can enforce such agreements as the parties actually make. Connecticut Union ofTelephone Workers v. Southern New England Telephone Company,148 Conn. 192, 197 (1961). The existence of a contract to arbitrate is a question for the court. Atkinson v. Sinclair Refining Co.,370 U.S. 238, 241 (1962). Whether or not a contract was entered into is determined by the intention of the parties, manifested by their words and acts. Garrison v. Garrison, 190 Conn. 173, 175
(1983).
The threshold issue for the court to decide, therefore, is CT Page 6350 whether the plaintiff and defendant entered into an agreement clearly requiring arbitration. The court, in examining the relevant contract language, must determine whether or not the parties clearly intended to agree to arbitration in this case.White v. Kampner, 229 Conn. 465, 472 (1994). The court must construe the contract as a whole and give it a reasonable construction, Dainty Rubbish Service, Inc. v. Beacon HillAssociation, Inc., 32 Conn. App. 530 (1993), keeping in mind the "positive assurance" test cited by plaintiff
Having reviewed the documents and exhibits submitted to me, including the HUD general conditions, HUD form 5370, and the supplemental general conditions, and having considered the briefs submitted, and the oral arguments made, I conclude that the contract documents, generally, and Article 31(e) specifically, cannot reasonably be read to mean that the parties entered into an agreement to arbitrate. I agree with the defendant's argument that Article 31 is merely a contract provision setting forth a series of potential or possible procedures which might be used in the resolution of disputes. As defendant notes, Article 31 refers to mediation and refers to arbitration, but it falls short of constituting an agreement to mediate or arbitrate. Defendant notes correctly that this section clearly contemplates the possibility that the parties may, in some other section of their contract, have agreed to resolve their disputes in the courts or that, alternatively, a matter may be referred to an independent mediator or arbitrator. But conspicuously lacking from the agreement is a provision clearly stating that all, or a portion of any, disagreements or disputes arising out of the contract or the breach thereof shall be submitted to arbitration. Such provisions are found in many of the reported decisions relating to this issue. See, e.g., Security Ins. Co. of Hartford v.DeLaurentis, 202 Conn. 178, 183 (1987) (". . . upon written demand of either, the matter or matters upon which such person and the company do not agree shall be settled by arbitration . . ."); GaryExcavating, Inc. v. North Haven, 164 Conn. 119, 123 (1972) (contract provided that contractor may demand arbitration if it does not agree with any decision of defendant sewer commission);A. Sangivanni Sons v. F.M. Floryan Co., 158 Conn. 467, 472
(1969) (arbitration clause called for arbitration of any disagreement pertaining to contract, with one exception). Seealso American Motorists Ins. Co. v. Brookman, 1 Conn. App. 219,222 (1984). Only through a strained reading can one read Article 31(e), along with other relevant documents, and conclude that the parties have in fact agreed to arbitrate. CT Page 6351
Moreover, as defendant notes, Article 31 of the Supplemental General Conditions at page 9 provides explicitly that:
 The parties agree that any and all claims asserted by or against the PHA arising out of this contract or related thereto shall be heard and determined either in the federal courts of the United States located in Connecticut or in the Connecticut state state's courts located in the county of New Haven, Connecticut.
I agree with defendant that this is a forum provision, and cannot be read in conjunction with all of the contract documents to suggest that the parties have in fact agreed to arbitrate.[1]
Plaintiff's second argument, in essence, is that the defendant has waived its right to object to arbitration by filing an answer and setoff in this matter, or should be estopped from objecting to arbitration. See plaintiff's Exhibit 11 to its May 19, 1997, Brief in Support of Application to Compel Arbitration and Appoint an Arbitrator. I agree with defendant's argument that the mistaken filing of an answer and setoff, immediately disavowed prior to the institution of arbitration proceedings, cannot be construed to constitute a waiver. As defendant notes, a waiver is an intentional relinquishment of a known right.National Transportation Company v. Toguet, 123 Conn. 468, 475
(1937). That is not what occurred here. Apparently due to misunderstanding, an answer and setoff dated March 17, 1997, was filed by defendant. However, by letter of March 19, 1997, see
Exhibit B of defendant's May 19, 1997, Memorandum in Opposition, defendant immediately stated that it did not submit to arbitration, and indicated that it had acted under the mistaken belief that a written arbitration agreement existed. This March 19, 1997 letter was sent to the American Arbitration Association, and plaintiff's counsel, prior to the commencement of any arbitration proceedings. Defendant thus immediately disavowed its mistaken filing, and continued to do so See, e.g.,
defendant's Exhibit F. (There is nothing in the record, it should be noted, to suggest that the filing of the answer and setoff was due to anything other than a mistake or misunderstanding.) By filing an answer and setoff, immediately disavowed, given the facts and circumstances of this case, it cannot be concluded that defendant agreed to arbitrate in the absence of such a clear and unequivocal written agreement. The record does not support the conclusion that there has been an CT Page 6352 "intentional relinquishment" in this case, because it was inadvertent and temporary. Nor has a "known right" been surrendered. At pages 13 and 14 of its May 19, 1997 Memorandum in Opposition, defendant indicates that it has reviewed over six hundred decisions addressing the issue of waiver and arbitration proceedings and has found no decision finding waiver under circumstances similar to those of the instant case. Nor has plaintiff provided any such citation to the court. Defendant's objection to arbitration was timely asserted, ConntechDevelopment Co. v. University of Conn., 102 F.3d 677, 685 (2d Cir. 1996), and was effective.
Among those cases cited by defendant in support of its argument are the following: Azcon Construction Company, Inc. v.Golden Hills Resort, Inc., 498 N.W.2d 630, 633 (S.D. 1993) ("the right to raise an objection to jurisdiction is preserved if it is made in a timely manner before a hearing on the merits" in an arbitration matter); Trans-Aire International, Inc. v. MaldenMills, Inc., 1985 WL 3506 (N.D.Ill. 1985) ("The general rule is that a party, having participated in an arbitration hearing cannot object to the arbitrability of the dispute . . . But an objection prior to the hearing preserves the arbitrability question . . ."); Julian Bisluk v. Town Realty, Inc., 90 Ill. App.3d 1039
(1980) ("We find no merit in defendant's contention that plaintiffs have waived their right to object to the arbitration since they had requested a continuance and appeared generally before the arbitrator. A timely objection to arbitrability preserves the right to challenge the award even after participation in the arbitration proceedings.") See alsoInternational Association of Machinists and Aerospace Workers,AFL-CIO v. Caribe General Electric Products, Inc., 913 F. Sup. 105
(1996). I agree with defendant that cases such as ConntechDevelopment Co. v. University of Connecticut, 102 F.3d 677 (2d Cir. 1996), and Paoletti v. Preferred Mutual Insurance Company, 1995 WL 656882, are distinguishable. In Conntech, the arbitrators rendered their award while the challenge to arbitration was pending. In Paoletti, the defendant was found to have initially agreed to arbitrate the issue of damages based on a substantial course of conduct. Neither case, in the court's view, is controlling. Likewise, Balch v. Zukerman,7 C.S.C.R. 360 (March 23, 1992), is distinguishable on its facts. In that case, counsel initially, through an ongoing course of conduct confirmed over time, consented to arbitration. Only on the date the arbitration was scheduled to proceed did one side inform the other it would not proceed as agreed. CT Page 6353
SUMMARY AND CONCLUSION
In conclusion, a review of the relevant documents and provisions persuades me that there was no agreement to arbitrate in this case. Moreover, given the circumstances presented, plaintiff's claim that defendant has surrendered its right to object to arbitration by mistakenly filing an answer and setoff, immediately disavowed prior to the institution of any arbitration proceedings, is rejected. Given the facts and circumstances of this case, granting plaintiff's application would require defendant to engage in an arbitration it has not consented to.
Consequently, plaintiff's application to compel arbitration and appoint an arbitrator is denied.
Douglas S. Lavine Judge Superior Court