COVENANT INSURANCE COMPANY *v.* THOMAS BANKS

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and PARSKEY, JS.

Argued January 9—decision released April 10, 1979

*Peter C. Dorsey,* for the appellant (defendant).

*John Keogh, Jr.,* with whom, on the brief, was *Robert L. Genuario,* for the appellee (plaintiff).

PETERS, J.  This is an appeal by the defendant from a judgment of the Superior Court that granted the plaintiff's motion for summary judgment, invalidated a purported appraisal award as well as the appointment of the umpire who rendered it, and enjoined the defendant from proceeding to enforce the award.

The facts of the case are not in dispute.  The plaintiff issued to the defendant a policy of insurance covering fire losses on certain property located in New Haven.  On November 7, 1976, a fire occurred on the premises for which a timely claim was made.  The plaintiff promptly assigned an adjustor to investigate the loss.  On December 21, 1976, the defendant requested a damage appraisal, as provided by the policy.  The plaintiff refused to participate in the appraisal process, citing as its reason the contention that the request for appraisal was premature because the company had not completed its investigation or rejected the defendant's proofs of loss, and therefore no disagreement yet existed.  Despite the plaintiff's refusal to participate, the defendant did appoint an appraiser and thereafter applied to the Court of Common Pleas for the ex parte appointment of an umpire.  The court appointed an umpire who, working with the appraiser appointed by the defendant, rendered an appraisal award on February 21, 1977.

The plaintiff instituted the present action to invalidate the appraisal award and the appointment of the umpire, and to enjoin the defendant from

proceeding to enforce the award. The plaintiff argued that the appointment of the umpire and the rendering of the award without its participation were invalid because the applicable policy provision called for an appraisal by *both* parties, and because the judicial appointment of an umpire did not comply with General Statutes §§ 52-410 and 52-411.[1] The plaintiff claimed that the appraisal procedure required initial agreement as to liability so that the only disputed issue upon appraisal would be the *amount* of the loss. The plaintiff did not and still does not concede liability, citing some evidence of

---

[1] "[General Statutes] Sec. 52-410. APPLICATION TO SUPERIOR COURT. A party to a written agreement for arbitration claiming the neglect or refusal of another to proceed with an arbitration thereunder may make application to the superior court for the county in which one of the parties resides or, in a controversy concerning land, for the county in which the land is situated or, when said court is not in session, to any judge thereof, for an order directing the parties to proceed with the arbitration in compliance with their agreement. Such application shall be by writ of summons and complaint, served in the manner provided by law. Such complaint may be in the following form: '1. On . . . , 19 . . , the plaintiff and the defendant entered into a written agreement for arbitration, of which exhibit A, hereto attached, is a copy. 2. The defendant has neglected and refused to perform said agreement for arbitration, although the plaintiff is ready and willing to perform the same. The plaintiff claims an order directing the defendant to proceed with an arbitration in compliance therewith.' The parties shall be considered as at issue on the allegations of the complaint unless the defendant files answer thereto within five days from the return day, and the court or judge shall hear the matter either at a short calendar session, or as a privileged case, or otherwise, in order to dispose of the case with the least possible delay, and shall either grant the order or deny the same, according to the rights of the parties."

"[General Statutes] Sec. 52-411. ARBITRATOR OR UMPIRE. If, in a written agreement to arbitrate, a method of appointing an arbitrator or arbitrators or an umpire has been provided, such method shall be followed; but, if no method is provided therein, or if a method is provided and any party thereto fails to avail himself of such method, or if for any other reason there is a failure in the naming of an arbitrator or arbitrators or an umpire, or, in case

arson as the cause of the fire. After considering the plaintiff's and the defendant's cross-motions for summary judgment, the court granted the plaintiff's motion and denied the defendant's. The defendant appeals from the consequent rendition of judgment for the plaintiff.

This appeal by the defendant concerns the interplay between §§ 52-410 and 52-411, on the one hand, and § 38-98 on the other. Section 38-98[2] requires fire insurance policies to contain an appraisal clause. The defendant contends that the decision

of death, inability or refusal to serve of any arbitrator or umpire, upon application by a party to the arbitration agreement, the superior court for the county in which one of the parties resides or, in a controversy concerning land, for the county in which the land is situated or, when said court is not in session, any judge thereof, shall appoint an arbitrator or arbitrators or an umpire, as the case may require. A person so appointed shall act under any such agreement with the same force and effect as if he had been specifically named or referred to therein; and, unless otherwise provided in the agreement, the arbitration shall be by a single arbitrator. An application under this section and the proceedings thereon shall conform to the application and proceedings provided for in section 52-410, except that such changes shall be made in the complaint as may be necessary to correctly and concisely state the plaintiff's claim."

[2] Section 38-98 of the General Statutes provides in relevant part: "Appraisal. In case the insured and this Company shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within twenty days of such demand. The appraisers shall first select a competent and disinterested umpire; and failing for fifteen days to agree upon such umpire, then, on request of the insured or this Company, such umpire shall be selected by a judge of a court of record in the state in which the property covered is located. The appraisers shall then appraise the loss, stating separately actual cash value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this Company shall determine the amount of actual cash value and loss. Each appraiser shall be paid by the party selecting him and the expenses of appraisal and umpire shall be paid by the parties equally."

of the trial court undermines the public policy represented by the enactment of § 38-98 because it permits an insurer unilaterally to frustrate appraisal simply by refusing to participate. This argument misconceives the position of the plaintiff that was accepted by the trial court. The plaintiff insurer concedes that the appraisal provisions are binding on both insurer and insured and may not be unilaterally abrogated by either. Rather, the plaintiff maintains that the appraisal procedure depends upon preconditions whose existence is in dispute. The plaintiff asserts that the appraisal procedure is inapplicable in the absence of agreement as to initial liability unless resort is had to the judicial remedy of §§ 52-410 and 52-411.

The appeal therefore raises two questions about the interrelationship between §§ 52-410 and 52-411 and § 38-98. Did the trial court err in its interpretation of § 38-98 that the appraisal clause did not permit recourse to appraisal by the insured without the appointment of an appraiser by the insurer? Did the trial court err in suggesting recourse to §§ 52-410 and 52-411 as a remedy for an insured aggrieved by inability to obtain appraisal? We conclude that the trial court was correct in both of these matters.

The appraisal clause mandated by § 38-98 of the General Statutes that appears in the contract of insurance between the parties provides that if the parties fail to agree "as to the actual cash value or the amount of loss," either party may demand in writing that each appoint an appraiser within twenty days of the demand. The appraisers should then select an umpire, but if they fail to agree on an umpire, "such umpire shall be selected by a judge

of a court of record." See *Sullivan* v. *Liberty Mutual Fire Ins. Co.,* 174 Conn. 229, 233, 384 A.2d 384 (1978).

The defendant, the insured, contends that this provision authorized him to petition the court for the appointment of an umpire, since there had been a failure by the parties to agree upon an umpire. This contention misconstrues the language of § 38-98. The phrase, "and failing for fifteen days to agree upon such umpire," refers not to the failure of the *parties* to agree but rather to the failure of the *appraisers* to agree. Thus, the provision presupposes that each party has already appointed an appraiser in accordance with the procedure specified, and that the appraisers cannot agree on the selection of an umpire. Only in that event may one of the parties request "a judge of a court of record" to select an umpire. If one of the parties has refused initially to select an appraiser, the provision in § 38-98 for judicial selection of an umpire never comes into play.

By contrast, §§ 52-410 and 52-411 of the General Statutes do provide an appropriate procedure for an insured who needs judicial assistance when an insurer unreasonably refuses to proceed with the appraisal procedure specified in the insurance contract. These sections, despite their generality, are not superseded by the more specific provisions of § 38-98, relating to fire insurance policies. The defendant's argument for mutual exclusivity cannot survive the recognition that § 38-98 empowers the judicial appointment of an umpire only when appraisers appointed by the parties cannot agree on the selection. The procedure authorized by §§ 52-410 and 52-411, specifying an adversary process by writ of summons and complaint, is appro-

priate in the event the initial requirement for appointment of appraisers has not been fulfilled. There is no need for such an adversary procedure under § 38-98, since both sides have selected appraisers and are thus aware of and involved in the proceedings.

One final question concerning the applicability of §§ 52-410 and 52-411 to the present case is whether the appraisal clause in the fire insurance policy constitutes "a written agreement to arbitrate" within the meaning of § 52-411. An agreement to arbitrate is defined in General Statutes § 52-408 as "[a]n agreement in any written contract . . . to settle by arbitration *any controversy* thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof . . . ." (Emphasis added.) In the past, courts have sometimes found a distinction between arbitration and appraisal, holding that the latter "is not an arbitration in the accepted legal sense of the word, because an arbitration is a method adopted to settle already-existing controversies," while an appraisal settles "questions of amount, quality, value or price which might come up during or after the performance of the contract." *First Ecclesiastical Society* v. *Besse,* 98 Conn. 616, 620, 119 A. 903 (1923). It is noteworthy that this distinction was made prior to the adoption of Connecticut's arbitration statutes in 1929.

Whatever validity the distinction may once have had, this court has more recently rejected an interpretation of the word "controversy" in § 52-408 that would render it "narrower . . . than its normal connotation." *Ginsberg* v. *Coating Products, Inc.,* 152 Conn. 592, 595, 210 A.2d 667 (1965). See note, "Judicial Interpretations and Applications of the

Connecticut Arbitration Statutes," 7 Conn. L. Rev. 147, 150–51 (1974). The normal connotation of "controversy" is more than sufficient to encompass the dispute over the amount of a fire loss that triggers the appraisal procedure in the insurance contract in question. In addition, our definition of arbitration as "the voluntary submission . . . of an existing *or future* dispute to a disinterested person or persons for final determination"; (emphasis added.) *Kantrowitz* v. *Perlman,* 156 Conn. 224, 226, 240 A.2d 891 (1968); is broad enough to include the appraisal clause. It is important as a matter of policy to have a device that allows one party to an insurance contract to compel compliance with the policy's appraisal procedure when the other party is reluctant to proceed. A narrow reading of § 52-411 would unfairly allow an insurance company unilaterally to refuse to proceed with the appraisal process, thus effectively limiting the insured to an expensive and time-consuming suit on the policy for the amount of the loss. See comment, "Fire Insurance Appraisal Provisions: A Needed Change," 1 Conn. L. Rev. 168 (1968).

The remedy that § 52-411 provides for an insured who needs judicial assistance "for any . . . reason" in the appointment of an umpire is both prompt and efficient. Section 52-410 provides that the court shall hear the application "either at a short calendar session, or as a privileged case . . . in order to dispose of the case with the least possible delay." The proceedings under § 52-410 may adjudicate questions antecedent to the appointment of an umpire relating to coverage of the insurance contract and applicability of the appraisal clause. *Visseli* v. *American Fidelity Co.,* 155 Conn. 622, 625–26, 237 A.2d 561 (1967).

These judicial proceedings depend upon compliance with that portion of § 52-410 that stipulates: "Such application shall be by writ of summons and complaint, served in the manner provided by law." Failure to comply with the requirement of service of process is conceded in this case. If an appraisal is to go forward despite the failure of one of the parties to appoint an umpire under the contract, it is mandatory that judicial appointment of an umpire be in accordance with the requirements of § 52-410. See *International Brotherhood of Teamsters* v. *Shapiro,* 138 Conn. 57, 63–64, 82 A.2d 345 (1951). The trial court was therefore correct in granting the plaintiff's motion for summary judgment, since the purported award of an umpire appointed through improper means is invalid as a matter of law.

There is no error.

In this opinion the other judges concurred.