[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION TO REARGUE
The plaintiffs have moved to reargue their "Application to Confirm Arbitrator's Award" which this court decided adversely to them by decision dated August 19, 1991. While the court did hear reargument on this matter, the court affirms its previous decision of August 19, 1991.
An agreement to arbitrate is defined by statute as follows:
 An agreement in any written contract, or in a separate writing executed by the parties to any written contract, to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof, or a written provision in the articles of association or bylaws of an association or corporation of which both parties are members to arbitrate any controversy which may arise between them in the future, or an agreement in writing between two or more persons to submit to arbitration any controversy existing between them at the time of the agreement to submit. . .
General Statutes 52-408.
 "Arbitration is a creature of contract." (citations omitted). It is designed to avoid litigation and secure prompt settlement of disputes and is favored by the law. (citations omitted)."`But a person can be compelled to arbitrate a dispute only if, to the extent that, and in the manner which, he has agreed so to do. (citations omitted)."`No one can be forced to arbitrate a contract dispute who has not previously agreed so to do. (citation omitted). The issue of whether the parties to a contract have agreed to arbitration is controlled by CT Page 8619 their intention. (citation omitted).
A. Dubreiul Sons, Inc. v. Lisbon, 215 Conn. 604, 608-09,577 A.2d 709 (1990).
 The cardinal rule in construing contracts is to ascertain the intention of the parties. [I]nterpretation of an agreement [by a court] is a search for the intent of the parties. "A contract is to be construed [by the trier of fact] according to what is fairly to be assumed to be the understanding and intent of the parties."
Id., 610.
 Although there is no particular form of words required to form an agreement to arbitrate, "the intent of the parties that arbitration be the exclusive method for the settlement of disputes arising under the contract must be clearly manifested. This express intent by both parties to enter into the arbitration agreement is essential to its existence." Emphasis added.) Domke, Commercial Arbitration 5.01, p. 49. An agreement to arbitrate must be clear and direct and not depend on implication. Id; accord Albers Milling Co. v. Barge Antone F, 487 F. Sup. 37
(W.D.Wash. 1980) ("no valid arbitration unless the parties have expressly contracted to use this method of adjudication of the dispute). Maross Construction, Inc. v. Central New York Regional Transportation Authority, 66 N.Y.2d 341, 345, 488 N.E.2d 67, 497 N.Y.S.2d 321 (1985) (when agreement to arbitrate is "clearly expressed," parties may be compelled to submit to arbitration).
Harry Skolnick Sons v. Heyman, 7 Conn. App. 175, 179,508 A.2d 64 (1986) (emphasis in original).
 In ascertaining intent, "we consider not only the language used in the contract but also the circumstances surrounding the making of the contract, the motives of the parties and the purposes which they sought to accomplish." (citations omitted). "The intention of the parties to a contract is to be determined from the language used interpreted in the light of CT Page 8620 the situation of the parties and the circumstances connected with the transaction. The question is not what intention existed in the minds of the parties but what intention is expressed in the language used." (citations omitted). This is so where the parties have their agreement in writing. (citations omitted). "In interpreting contract items, we have repeatedly stated that the intent of the parties is to be ascertained by a fair and reasonable construction of the written words and that the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (citation omitted). Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms. "`A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings.'" (citations omitted).
Barnard v. Barnard, 214 Conn. 99, 109, 110, 570 A.2d 690 (1990).
Plaintiffs have moved to reargue their "Application to Confirm Arbitrator's Award" on the ground that General Statutes52-408 et seq. as interpreted in Covenant Ins. Co. v. Banks,177 Conn. 273, 413 A.2d 862 (1979) has effectively eliminated any distinction between "appraisal" and "arbitration." Plaintiffs assert that the procedure for stock valuation in paragraph two of the parties' November 8, 1989 agreement calls for arbitration and that the decision rendered thereunder should be reviewed pursuant to General Statutes 52-408 et seq., the arbitration statutes.
The Covenant case is an appeal from the granting of summary judgment that "invalidated a purported appraisal award as well as the umpire who rendered it, and enjoined the defendant from proceeding to enforce the award." Covenant, supra, 274. The issues before the court were: (1) whether General Statutes 52- 410 (application to proceed with arbitration) and 52-411 (method for appointing an arbitrator or umpire) provide a remedy for an insured aggrieved by inability to obtain relief under the statutorily mandated fire insurance policy appraisal clause of General Statutes 38-98; and (2) whether the appraisal clause constitutes "a written agreement to arbitrate" within the meaning of General Statutes 52-411. Id., 277-79. The court held that the "definition of arbitration as `the voluntary submission. . .of an existing or future dispute to a disinterested person or persons CT Page 8621 for final determination'; (citation omitted); is broad enough to include the appraisal clause." Id., 289 (emphasis added). The court further held that "[t]he normal connotation of `controversy' is more than sufficient to encompass the dispute over the amount of a fire loss that triggers the appraisal procedure in the insurance contract in question." Id. The court expressed concern that "(a) narrow reading of 52-411 would unfairly allow an insurance company unilaterally to refuse to proceed with the appraisal process, thus effectively limiting the insured to an expensive and time consuming suit on the policy for the amount of the loss." Id.
Covenant is distinguishable from the present case in that it involves a statutorily mandated valuation clause. In interpreting the clause, the court was not concerned with questions of the parties' intent. The present case does not involve compulsory appraisal or arbitration. The parties in the present case wilfully chose the language of their contract which must be construed pursuant to the laws of contract and "voluntary" arbitration.
Plaintiffs cite the following language from Covenant for the proposition that there is no distinction between arbitration and appraisal:
 One final question concerning the applicability of 52-410 and 52-411 to the present case is whether the appraisal clause in the fire insurance policy constitutes "a written agreement to arbitrate" within the meaning of 52-411. An agreement to arbitrate is defined in General Statutes 52-408 as "[a]n agreement in any written contract. . .to settle by arbitration any controversy thereafter arising out of such contract, or out of the failure or refusal to perform the whole or any part thereof. . . ." (Emphasis added.) In the past, courts have sometimes found a distinction between arbitration and appraisal, holding that the latter "is not an arbitration in the accepted legal sense of the word, because an arbitration is a method adopted to settle already existing controversies," while an appraisal settles "questions of amount, quality, value or price which might come up during or after the performance of the contract." First Ecclesiastical Society v. Vesse, 98 Conn. 616, 620, 119 A. 903 (1923). It is noteworthy that this distinction was made prior to the adoption of Connecticut's arbitration statutes in 1929.
CT Page 8622
Covenant, supra, 279. Passage of 52-408 et seq. did expand the definition of "controversy." However, the passage of our arbitration statutes did not eliminate the requirement that a submission to arbitration be voluntary. Unlike Covenant, the Present case turns on whether the parties intended to arbitrate and not on the definition of a controversy.
Plaintiffs further argue that the case of Ginsberg v. Coating Products, Inc., 152 Conn. 592, 210 A.2d 667 (1965), is analogous to the present case. In Ginsberg, the court held that a dispute over the value of stock certificates was a controversy arbitrable under General Statutes 52-408. Ginsberg, supra, 596. Ginsberg is distinguishable on the ground that the stockholders' agreement contained an express provision for "arbitration" of "[a]ny controversy arising under or pertaining to" the agreement. Id., 595.
The issue addressed in Ginsberg, whether the appraisal clause is a "controversy" as defined in 52-408, is not at issue here. The threshold issue in the present case is whether the parties' intent, as evidenced in their writing, clearly and expressly manifests an intent to arbitrate.
The passage of 52-408 et seq. did not eliminate the right of parties to contract for an appraisal of value. See Harry Skolnick Sons v. Heyman, 7 Conn. App. 175, 508 A.2d 64 (1986); Mott v. Gaer Bros., Inc., 22 Conn. Sup. 449, 174 A.2d 549 (Super.Ct., 1961); Textron v. Hess, 21 Conn. Sup. 488, 157 A.2d 605 (Sup.Ct., 1959).
In the present case, the contract was executed for the sole purposes of the sale and purchase of 264 shares of common stock. the contract calls for the appraisers to "independently determine the fair market value of the Sellers' shares of stock as of September 30, 1989. . . ." November 8, 1989, Agreement 2. The agreement further gives Buyers' appraiser unlimited access to the Company's data. Id. The contract further provides that "each appraiser appointed hereunder shall be a member of the Business Valuation Section of the American Society of Appraisers and shall have had substantial experience in the valuation of businesses which are of the type. . .and of the general size. . .of the Buyers." Id.
The intent of the parties, as expressed in their contract, is for an appraisal without the attendant formalities called for by the arbitration statutes. The court concludes that the plaintiffs cannot successfully claim, at this point, that the informal valuation proceeding held was a statutory arbitration proceeding. Accordingly, the plaintiffs' application must be denied. CT Page 8623
For the foregoing reasons, after reargument, the court denies the relief requested and affirms the decision of August 19, 1991 denying the Application to Confirm Arbitrator's Award.
SCHALLER, JR.