[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON THE PLAINTIFFS' APPLICATION TO VACATE APPRAISAL AWARD
The plaintiffs, whose property was damaged by fire on September 20, 1992, seek to vacate an appraisal award issued on August 24, 1993, which the defendant admits was unilaterally executed by the defendant's appraiser and the umpire after the person that the plaintiffs had originally selected withdrew as their appraiser. The plaintiffs have asserted a number of grounds for vacating the award, including the claim (Complaint 13) that the award was based upon "partiality or corruption" on the part the insurer's appraiser and the umpire in proceeding with the appraisal and rendering the award in the absence of the other appraiser knowing that he had resigned, and in refusing the plaintiffs' requests for the continuance of the appraisal so that the substituted appraiser could participate.
When counsel appeared for oral argument on the plaintiffs' application, they were directed to brief the plaintiffs' additional claim that the application should be granted as a matter of law because the appraisers and the umpire had not been sworn prior to the appraisal. Briefly stated, the plaintiffs' claim as briefed is that appraisers and umpires under the Connecticut standard form insurance policy, General Statutes 3a-307, are "arbitrators" within the meaning of 52-414(d) of the General Statutes which mandates that they be sworn unless that requirement is waived in writing by the parties, while the defendant relies on the appraisal provision of the standard form fire insurance policy mandated by the statute which does not require an oath of umpires or appraisers.
The appraisal provision which is currently mandated for all CT Page 10646 fire insurance policies is virtually identical with the one that was enacted one hundred years ago as Chapter 26 of Public Acts, 1893, except for changes required in recent years to make the policies more easily readable under the Insurance Plain Language Act, General Statutes 38a-295 et seq. They both provide that if the parties fail to agree on the amount of loss, the insured and the company will each select two "competent and disinterested" appraisers and that they will first select a "competent and disinterested" umpire and upon their failure to agree, shall submit "their differences. . . to the umpire". (emphasis added).
The policy provision in this case, which has been set out in paragraph 4 of the plaintiffs' complaint, in the interests of readability or otherwise, inexplicably omits the statutory qualifying adjective "disinterested", thereby requiring only competency on the part of the appraisers, and then states that they will "choose an umpire" who apparently need not be either "competent" or "disinterested." The statutory policy provision (38a-307) then requires the appraisers to appraise the loss, to submit "their differences, only" to the umpire and then provides that a written award "of any two" when filed with the insurer "shall determine the amount of actual cash value and loss."
The plaintiffs' brief relying principally on Covenant Insurance Co. v. Banks, 177 Conn. 273, correctly states that Connecticut case law since the adoption of the arbitration statutes in 1929 no longer distinguishes between arbitration and appraisal. However, it can reasonably be argued that, despite the holding in Banks that the appraisal clause in a fire insurance policy constitutes "a written agreement to arbitrate within the meaning of the arbitration statutes, the appraisers, nevertheless, are not "arbitrators" in any sense because they only ascertain facts by reaching individual conclusions and meet only for the purpose of ironing out differences in their conclusions. See Hartford Lloyd's Insurance Co. v. Teachworth, 898 F.2d 1058, 1062 (5th Cir. 1990).
Arbitration should not be confused with appraisement which is "what takes place in any case where parties refer to selected persons some ministerial duty or some matter involving only the ascertainment of facts, requiring neither hearing nor exercise of judicial discretion." 5 Am.Jur.2d, Arbitration and Award 3. Under the facts of this case, and based on the clear language of the statutory appraisal clause, the appraisal phase of the valuation process does not become an arbitration in the true sense until the appraisers submit their "differences" to the umpire that CT Page 10647 has been selected to help resolve them.
A complicating factor in the above analysis is that "any two," that is, an appraiser and an umpire, as in this case, may make the final decision, and, at least under those circumstances, the lone appraiser may therefore also have the status of an arbitrator. See comment, "Fire Insurance Appraisal Provisions: A Needed Change", 1 Conn. L. Rev. 168, 181-182 (1968). In any event, the apparent anomaly of an umpire acting jointly with an appraiser selected by one of the parties, and the complications created thereby, as discussed in the above-cited law review article, can be minimized by requiring the only "real" arbitrator in the proceeding to take the oath required of any other such quasi-judicial officer pursuant to 52-414(d) of the General Statutes.
The plaintiffs in their initial brief dated October 11, 1993, make reference (p. 8) to the "declaration of appraiser fork prepared and copyrighted by the Defendant's own appraiser. . ." (Plaintiffs' Exhibit E) which contains the oath of the appraisers as well as the oath of the umpire which, of course, were never signed. The printed oath states that the signer accepts his appointment as umpire and that he solemnly swears "that I will act with strict impartiality in all matters of difference that shall be submitted to me . . . and I will make a true, just and conscientious award, according to the best of my knowledge, skill and judgment." (emphasis added).
The form of the oath accurately and succinctly describes the quasi-judicial arbitral duties which he may be called upon to perform and the clear distinction between his function and the more limited roles of the appraisers in the process. If those statements had been signed at the outset of the appraisal process, they would have served to negate many of the claims made by the plaintiffs of alleged improprieties in the "unilateral" rendition of the final award.
For the foregoing reasons, the court finds that the failure of the umpire, if not of the appraisers, to be sworn as required by52-414(d) of the General Statutes, invalidates the award. Reinke v. Greenwich Hospital Association, 175 Conn. 24, 29.
Accordingly, the award is vacated.
Hammer, J. CT Page 10648