[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION TO CONFIRM IN PART AND TOCORRECT IN PART THE APPRAISAL AWARD AND DEFENDANT'S MOTION TO CONFIRM THEAPPRAISAL AWARD
This case stems from a disagreement between the insureds and their insurer as to the amount of loss sustained from a fire in the insureds' home on April 18, 1995. The controversy was submitted to arbitration pursuant to the provision set forth below in the insurance policy issued by the defendant to the plaintiffs.
8 Appraisal
 If you and we fail to agree on the amount of loss, either party may make written demand for an appraisal. Upon such a demand each party must select a competent and impartial appraiser and notify the other of the appraiser's identity within 20 days after the demand is received. The appraisers will select a competent and impartial umpire. If the appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire.
The arbitration process started with the plaintiffs' demand for an appraisal and their designation of Meyer Biller as appraiser. The defendant selected Richard McKenna as its appraiser. Upon the agreement of the two appraisers, Judge William Sullivan of this court appointed Randy Harakas as the umpire on September 22, 1995.
In moving to confirm, the defendant obviously agrees with the appraisal award. Initially, the plaintiffs, in their brief, dated January 16, 1996, sought corrections in six specific areas; but CT Page 2229 in their later brief dated February 5, 1996, these have been reduced to four, namely (1) an increase in the amount awarded for loss to the building upon a claim of clerical error by the umpire; (2) an increase in the amount attributable to loss of contents upon a claim that the umpire did not take into account the adjuster's increased estimate; (3) an order vacating the umpire's award of an appearance allowance for the kitchen cabinets, upon a claim that there is no provision for such an allowance in the submission, coupled with a direction to the umpire to make a proper determination of loss; and (4) an inclusion of the cost to replace or repair the alarm system upon a claim, that the umpire either mistakenly failed to include it or miscalculated the figures presented.
The plaintiffs also contend that this arbitration contains a "compulsory element" necessitating de novo review and use of the substantial evidence test as the proper standards. For relief, the plaintiffs' request orders that will effectuate their claims in items (1) and (2). For items (3) and (4), the plaintiffs ask for an order permitting the parties to convene a new appraisal panel to establish replacement costs, actual cash values and amounts of losses or, in the alternative, an order for a further hearing limited to the amount of loss for the kitchen cabinets and alarm system or at least an order that "would permit the plaintiffs to challenge [these] aspects of the award in the event that an action on the policy is commenced." The plaintiffs have also asked for interest from November 9, 1995, the date of the appraisal award to the date the award is confirmed and corrected.
 I
A hearing was held on January 22, 1996. Margaret O'Neil an adjuster for the defendant and Randy Harakas, the umpire, testified and several exhibits were introduced.
From the evidence the court finds that the following facts were proven. Margaret O'Neil adjusted the plaintiffs' contents claim. Her original estimates were $28,778.86 for replacement cost and $22,459.98 for actual cash value. Before the arbitration hearing, Ms. O'Neil made upward revisions so that the estimates for replacement cost became $31,765.58 and for actual cash value $24,430.09.
At the arbitration hearing, Margaret O'Neil answered questions of the two appraisers and the umpire. She observed that CT Page 2230 Mr. Harakas had a copy of her original estimates and he questioned her about them. She told Mr. Harakas in the presence of both appraisers that she had increased her amounts and showed a copy of her revised report. Previously she had provided copies of all documents when such were requested. At the hearing, however, neither adjuster nor the umpire asked for a copy of her revised report. Her revised report qua report was never placed in evidence. The plaintiffs' appraiser submitted for the umpire's consideration two other contents estimates that were in excess of Margaret O'Neil's original figures. In the umpire's appraisal award there is an item in the contents' valuation which recites "Per Meg O'Neil" and sets forth her original figures of "Rep. Cost $28,779.86" and "ACV $22,459.98."
Mr. Harakas is the principal in an independent adjusting firm. He met with the parties' appraisers four or five times. Both appraisers had opportunities to advise and educate him. He had received Margaret O'Neil's original report from one of the appraisers. Not having been presented with Ms. O'Neil's revised report, Mr. Harakas apparently did not remember or became unaware of what she said about increasing her amounts.
Page 3 of the appraisal award is a statement of loss for the building in which both $41,142.09 and $43,142.09 appear under the heading "ACV." Mr. Harakas admitted that the latter amount instead of the former should have been placed in the summary of the award on page 1 and that the mistake was a clerical error.
In the appraisal award, an allowance of $72.10 was given for the alarm key pad. Mr. Harakas had no recollection of having been presented with a claim for damage to the plaintiffs' alarm system.
Each appraiser argued the issue of the kitchen cabinets before the umpire. The plaintiffs' appraiser stated that he observed damage to the cabinets. The defendant's appraiser said that he saw none. Mr. Harakas found that the cabinets did not have to be replaced and, for that reason, he did not establish a replacement cost or an actual cash value (ACV) for them. The umpire's solution for this controversy was to award $2,500.00 as an appearance allowance for the cabinets. Mr. Harakas admitted frankly that, although the money could be used to clean or possibly repair the cabinets, the amount award was not geared to the cost of repair and was strictly a compromise. CT Page 2231
Aside from papers pertaining to Margaret O'Neil's estimates and revision, one letter from the plaintiffs' attorney to the defendant's lawyer and the appraisal award, no record of the proceedings before the umpire was produced. Presumably, none was made.
 II
Although the subject of this dispute is termed an appraisal award, it is, in law, the same as an award resulting from an arbitration proceeding. Covenant Ins. Co. v. Banks, 177 Conn. 273,280 (1979); see Gen. Stat. § 52-411. The motions of both parties are, in fact, predicated expressly upon the arbitration statutes with the defendant seeking confirmation pursuant to § 42-417 while the plaintiffs' motion to confirm and correct relies principally on § 42-419. The latter statute allows an award to be corrected or modified if the court finds anyone of the following defects "(1) if there has been an evident material miscalculation of figures or an evident material mistake in the description of any . . . property referred to in the award; (2) if the arbitrators have awarded upon a matter not submitted to them unless it is a matter not affecting the merits of the decision upon the matters submitted; or (3) if the award is imperfect in matter of form not affecting the merits of the controversy."
The defendant in its post-trial brief, dated February 6, 1996, accepts the umpire's admission of a mistake in transposing the "ACV" figure for the loss to the building and agrees with the plaintiffs that the proper amount is $43,142.09. The question of a clerical error is therefore removed from the case.
For the plaintiffs' other claims, however, the court must first decide whether a compulsory or a voluntary arbitration is involved. If the arbitration is compulsory as the plaintiffs advocate, the court must undertake a de novo review of the umpire's interpretation and application of the law and apply the substantial evidence test[1] to his facts. Stephan v.Pennsylvania General Ins. Co., 224 Conn. 758, 763 (1993);Chmielewski v. Aetna Casualty Surety Co., 218 Conn. 646, 656
(1991). On the other hand, judicial review of a voluntary arbitration is, in general terms, limited to a determination of whether the award conforms to the submission. American UniversalIns. Co. v. DelGreco, 205 Conn. 178, 186 (1987). CT Page 2232
Some further findings are in order. The language of the appraisal clause in the insurance policy quoted at page 1, supra,
accords with the form required to be placed in all fire insurance policies[2] by Gen. Stat. § 38a-307. Parenthetically § 38-307 and clause no. 8 of section 1 of the policy provide that a written award can become effective upon being signed by any two of the appraisers and the umpire as occurred in this case with the signatures of appraiser McKenna and umpire Harakas on the award form.
To be compulsory, an arbitration procedure must be compelled by statute and the statute itself must, either expressly or impliedly preclude resort to the courts in the first instance.American Universal Ins. Co. v. DelGreco, supra at 187, 189. SeeChmielewski v. Aetna Casualty Surety Co. supra at 666. Some examples of compulsory arbitration statutes are § 7-473c
(between municipalities and representatives of municipal employees), § 10-153f (between boards of education and teachers' bargaining units) and § 38a-336 (between insurer and insured re uninsured/underinsured motorist coverage). Further, where arbitration is made compulsory, it is invariably described in statutes as "binding" or "binding and final." e.g. §§ 7-473c(b),10-153f(b)(4), 38a-336 (c).
Contrary to the plaintiffs' contentions, the appraisal clause of § 38a-307 does not exhibit the attributes of compulsory arbitration. The appraisal clause, to be sure, has its origin in a statute. But, what § 38a-307 mandates is the inclusion in every fire policy of a choice of arbitration or litigation in the event that there is a disagreement as to loss. As stated inCovenant Ins. Co. v. Banks, supra at 280, it is important as a matter of policy to construe as a voluntary submission a device that allows one party to an insurance contract to compel compliance with the policy's appraisal procedure when the other party is reluctant to proceed. The source of the arbitration in this case and of the umpire's authority is not § 38a-307, rather it is the insurance policy, a contract voluntarily entered into by the parties.
 III
In a voluntary arbitration, the submission may either be restricted or unrestricted. Bodner v. United Service AutomobileAssn., 222 Conn. 480, 490 (1992); Maluszewski v. Allstate Ins.Co., 34 Conn. App. 27, 32 (1994). Here the submission was CT Page 2233 unrestricted as no impediments were placed on the umpire's authority. The appraisal clause quoted on page 1, supra continues as follows:
 The appraisers shall then determine the amount of loss stating separately the actual cash value and the amount of loss to each time. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of loss. If they cannot agree, they will submit their differences to the umpire.
When Mr. Harakas accepted his appointment as umpire, he did so with the following oath
 I, the undersigned, hereby accept the appointment of umpire, as provided in the foregoing agreement, and solemnly swear that I will act with strict impartiality in all matters or (sic) difference that shall be submitted to me in connection with this appointment, and I will make a true, just and conscientious award, according to the best of my knowledge, skill and judgment. I am not related to any of the parties to this agreement, nor interested as a creditor or otherwise in said property or insurance.
The court disagrees with the plaintiffs' suggestion that the language of the appraisal clause or the language of the umpire's oath constitutes a restriction on the submission. The authority of the umpire could be limited only if the agreement contained express language restricting the breadth of issues, reserving explicit rights or conditioning the award in judicial review. In the absence of such qualifications, the agreement of submission is unrestricted. Fraulo v. Gabelli, 37 Conn. App. 708, 715
(1995).
The factors of § 52-419 (a) do not aid the plaintiffs with their alarm system and kitchen cabinet claims. In the court's view the unrestricted submission allowed and even encouraged the umpire to compromise competing claims. The award for loss to the contents presents a more troublesome question. If Ms. O'Neil's revised report, available to the parties' appraisers, had been placed in evidence by either of them, the umpire probably would have adopted it. The situation, however, is not like Local 63,Textile Workers Union v. Cheney Bros., 141 Conn. 606 (1954) cert. denied 348 U.S. 958, 75 S.Ct. 449, 450, 99 L.Ed. 748 (1955) where the court redacted language in the awards of an arbitrator and CT Page 2234 the awards, in redacted form, conformed to the submission. The plaintiffs' reliance on Local 63 is misplaced. The lesson from that case at p. 614 is that "if part of an award is within the submission and part of it is not, the former may be sustained and the latter rejected [under § 52-419] if the two can be separated without an injustice." In this case where the award accords with the submission, the plaintiffs are asking the court to order evidence not considered by the umpire substituted for evidence he has considered. Such a request is violative of the principles of voluntary arbitration where the submission is unrestricted. American Universal Ins. Co. v. DelGreco, supra
at 186.
Finally, the court has reviewed the questions of the umpire's lack of good faith and manifest mistake issues raised by the plaintiffs presumably under the category of common law errors as defined by the Supreme Court in Garrity v. McCaskey, 223 Conn. 1,6 (1992). To the court's recollection, no evidence was presented from which a lack of good faith could be inferred. On this issue, the language in the plaintiffs' brief is quite equivocal. "Manifest Mistake", as discussed in Garrity v. McCaskey, supra at 7-11, can be a ground for avoidance of an award under § 52-418. But the underpinnings of manifest mistake, egregious misbehavior or manifest disregard of the law on the part of the umpire simply do not exist in this case.
 IV
Much of the controversy revolves around the role of a reviewing court. The plaintiffs rely upon language in Chmielewskiv. Aetna Casualty Surety Co., supra at 679 that favors a more expansive reading of § 52-419 (a). The plaintiffs' reference to the Supreme Court's language is, however, out of context. The relevant paragraph does not obliterate the differences between voluntary and compulsory arbitrations. The pertinent language is as follows:
 Although the language of § 52-419 (a) can be read narrowly, the court's role of reviewing the legal determinations of arbitrators de novo and their factual determinations under the substantial evidence standard requires that the statute be given a more expansive meaning, so as to encompass this case, where the court properly upheld the arbitrators' factual findings and properly reversed their legal determination. Unlike the court's more limited role in reviewing voluntary CT Page 2235 arbitration awards, where the court in most cases simply compares the award to the submission, in a compulsory arbitration case the court must have the authority to enter an appropriate order modifying the award so as to reflect those factual findings and that legal determination, and thus to effect the intent of the award as it should have been rendered under the law and to promote justice between the parties. General Statutes § 52-419 (b).
The reasons for the limited scope of judicial review in voluntary arbitration cases are discussed in American UniversalIns. Co. v. DelGreco, supra at 190. In voluntary arbitration, there is no requirement for a verbatim record, findings of fact or conclusions of law. Unless otherwise required by the submission, the arbitrator need not explain how the award was reached and the award need not refer to the specific claims of the parties. Moreover, an arbitrator's failure or refusal to receive evidence does not ipso facto amount to misconduct. The plaintiffs who are challenging the award must prove that because of the evidentiary ruling or error they were in fact deprived of a full and fair hearing before the umpire. O G/O'Connell JointVenture v. Chase Family Limited Partnership No. 3, 203 Conn. 133,149 (1987). The plaintiffs did not and could not sustain their burden because their appraiser had the same opportunity as the defendant's appraiser to put Ms. O'Neil's revised report into evidence before the umpire.
 V
The plaintiffs' motion to confirm and correct is granted to the extent that the item in the award for loss to the building is modified so that it is now $43,142.09 instead of $41,142.09. All other sought for corrections or modifications are denied. The defendant's motion to confirm and the plaintiffs' motion insofar as it requests a confirmance are both granted subject to the aforementioned modification. Although this proceeding results in an increase of $2,000.00 to the plaintiffs, the court does not think that the situation warrants supplementing the increase with prejudgment interest, see Stephan v. Pennsylvania General Ins.Co., supra at 765; Middlesex Mutual Assurance Co. v. Walsh,218 Conn. 681, 701-02 (1991).
Jerrold H. Barnett, Judge